RAYMOND EARL LEE, a Minor, by Ray Lee, his Father and Next Friend, Plaintiff-Appellant, v. INGALLS MEMORIAL HOSPITAL *et al.*, Defendants-Appellees (Steinberg, Burtker and Grossman, Ltd., Petitioner-Appellee).

First District (1st Division)   No. 1—91—1561

Opinion filed July 20, 1992.

Donald V. Young and William J. Sneckenberg & Associates, both of Chicago (William J. Sneckenberg and Jonathan D. Moses, of counsel), for appellant.

Steinberg, Burtker & Grossman, Ltd., of Chicago (Richard J. Grossman, of counsel), for appellee Steinberg, Burtker & Grossman, Ltd.

JUSTICE O'CONNOR delivered the opinion of the court:

In 1981, petitioner, Steinberg, Burtker, and Grossman, Ltd., began its representation of plaintiff, Ray Lee, on behalf of his minor son, Raymond Earl Lee, in a medical malpractice action. Seven years later, Lee terminated petitioner and secured new counsel. In 1990, the cause went to trial, and Lee received a jury verdict in the amount of $3.3 million. Petitioner subsequently sought attorney fees for work performed for Lee's benefit during the seven-year period in which petitioner represented Lee. After a hearing on the matter, the circuit court awarded petitioner $100,000. Lee appeals.

We affirm.

Raymond suffered paralysis of his right arm as a result of injuries sustained during his birth on February 27, 1977, at Ingalls Memorial Hospital. In 1979, Lee consulted with, and ultimately entered into, a written fee agreement with attorney Kenneth Thomas.

Thomas referred Lee to petitioner in August 1981. From that time until September 4, 1988, petitioner performed legal services for Lee, such as filing the complaint, preparing interrogatories, arranging for expert witnesses and taking depositions. In the summer of 1988, a structured settlement offer was extended to Lee from the insurance carrier of one of defendants. At that time, Raymond, then aged 11, began to experience seizures. Lee sought to have a medical evaluation performed to determine if the seizures were related to the birth injury and, if so, to include the condition as part of the medical malpractice action. Apparently there was some disagreement between petitioner and Lee as to the litigation's progress with regard to Raymond's seizures. Lee later rejected the settlement offer, due, in large part, to the complications in Raymond's condition.

On September 4, 1988, Lee wrote to petitioner, indicating that he no longer desired its representation in the case. Lee asked that all the legal files be "turned over" to him as soon as possible. In a letter dated October 21, 1988, petitioner informed Lee that the firm was unable to turn over the files. Lee was instructed to have his new attorney contact petitioner so that arrangements could be made to reproduce the documents, at Lee's expense.

Lee subsequently sought legal assistance from attorney Donald Young. Young completed discovery, and the case proceeded to trial in September 1990. As noted above, a jury awarded Raymond $3.3 million. Attorney fees in the amount of $367,520 were approved by the probate court in January 1991, based upon the $1.1 million in insurance proceeds actually recovered.

Petitioner based its claim for fees on 193.5 hours of service performed from August 1981 to November 1988. Petitioner claimed its customary hourly charge during this period was between $150 and $185 an hour.

The circuit court specifically found that no contract existed between petitioner and Lee for a contingency fee. The court also found that Lee received a direct benefit from the work performed by petitioner.

Lee asserts that petitioner forfeited any fees to which it may be entitled by failing to enter into a written fee agreement as is required by the Code of Professional Responsibility. 107 Ill. 2d R. 2—106(c)(2).

Initially we note that the Code of Professional Responsibility was repealed as of August 1, 1990. Illinois now utilizes the Rules of Pro-

fessional Conduct for the regulation of the practice of law. The former Rule 2—106(c)(2) can be found, in substantively similar form, in Rule 1.5(c). (134 Ill. 2d R. 1.5.) In any event, both rules direct that contingent fee agreements be in writing. However, in the present case, no contingency fee agreement was entered into between petitioner and Lee. With regard to attorney fees not earned on contingency, the rule requires that those fees "be reasonable." (134 Ill. 2d R. 1.5.) A reasonable fee, according to the rule, is determined upon consideration of, *inter alia*, the time and labor involved, the difficulty of the legal issue involved, and the fee customarily charged in the locality for similar legal services. (134 Ill. 2d R. 1.5.) Our review of the record reveals that the circuit court considered these factors and that no violation of Rule 1.5 occurred under the facts presented.

■ Lee, however, directs our attention to *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 501 N.E.2d 901, for support of his argument. There, the discharged lawyer and the substituted lawyer entered into a contract to split the client's fee, contrary to Rule 2—107 of the Code of Professional Responsibility. (107 Ill. 2d R. 2—107.) The appellate court found that such fee splitting arrangements were against public policy and that, as a result, attorney fees based on a theory of *quantum meruit* were foreclosed. (*Leoris*, 150 Ill. App. 3d at 354.) Although instructive, Lee's reliance on *Leoris* is misplaced because, here, no agreement violating public policy was entered into between petitioner and attorney Young. Based on the foregoing, the Code of Professional Responsibility does not bar recovery of attorney fees in the manner Lee suggests.

Lee next asserts that petitioner is not entitled to fees because petitioner's services did not contribute measurably to Lee's verdict.

■ In Illinois, a client has the right to discharge his attorney at any time, with or without cause. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.) A discharged attorney is entitled only to fees calculated on a *quantum meruit* basis. (*Rhoades*, 78 Ill. 2d at 227-29.) The term *quantum meruit* literally means "as much as he deserves." (*Van C. Argiris & Co. v. FMC Corp.* (1986), 144 Ill. App. 3d 750, 753, 494 N.E.2d 723.) The time and labor required in a given case is but one factor to be considered in assessing a reasonable attorney fee under the doctrine of *quantum meruit*. (*Johns v. Klecan* (1990), 198 Ill. App. 3d 1013, 1019, 556 N.E.2d 689.) Other factors to be considered include the attorney's skill and standing, the nature of the cause and the novelty and difficulty of the subject matter, the degree of responsibility in managing the cause, the usual and customary charge in the community, and the benefits resulting to the client. (*Neville v. Davinroy* (1976),

41 Ill. App. 3d 706, 711, 355 N.E.2d 86.) The circuit court's decision regarding whether to award attorney fees is a matter within its discretion and, upon review, will not be disturbed absent abuse of that discretion. *Lurie v. Canadian Javelin Ltd.* (1982), 93 Ill. 2d 231, 443 N.E.2d 592.

Here, the testimony adduced at the hearing revealed that petitioner performed a great deal of legal services for Lee. For example, petitioner investigated the claim and found the expert witness, Dr. Lorenzini, who testified that the obstetrician failed to follow proper medical standards during Raymond's birth. Petitioners deposed several witnesses and, as noted above, pursued a settlement offer. Lee, himself, testified that these services were performed and that he received a benefit from them. Accordingly, the circuit court's decision to award attorney fees does not appear to be erroneous.

Lee argues that the circuit court should have awarded only $34,153 instead of the $100,000 ultimately awarded to petitioners. Lee bases his argument on the fact that the hours petitioner claims to have spent on the case, when multiplied by the hourly rate, do not amount to $100,000.

As noted above, the time and labor required in a particular case is not the sole factor to be considered in the *quantum meruit* equation. A reviewing court may not disturb an award of attorney fees merely because it may have made a different award. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890.) The amount awarded is fact dependent and is to be determined according to the weight afforded the evidence by the circuit court. *In re Estate of Healy*, 137 Ill. App. 3d at 411.

Here, no basis exists upon which to disturb the circuit court's award. Our review of the record reveals that the court based the $100,000 award not only on the time sheets provided but on the testimony presented at the hearing. That testimony revealed that petitioner was involved in Lee's case for seven years, during which time the theory of the case was developed and the key witness, later utilized by subsequent counsel, was secured. Accordingly, the circuit court did not abuse its discretion in determining the amount of the award.

The judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.