2017 IL App (1st) 170680
Order filed: December 22, 2017

FIFTH DIVISION

Nos. 1-17-0680 and 1-17-0871 (consolidated)

_____

| | | |
|---|---|---|
| No. 1-17-0680 | ) | Appeal from the |
| | ) | Circuit Court of |
| THE FOREST PRESERVE DISTRICT OF | ) | Cook County. |
| COOK COUNTY, ILLINOIS, a Body Corporate | ) | |
| and Politic of the State of Illinois, | ) | |
| | ) | |
|     Plaintiff and Respondent-Appellant and | ) | |
|     Cross Appellee, | ) | |
| | ) | |
| v. | ) | Nos.  15 L 50227 |
| | ) |        00 L 50726 |
| CONTINENTAL COMMUNITY BANK AND TRUST | ) |       (consolidated) |
| COMPANY, an Illinois Corporation, as Successor to | ) | |
| Maywood-Proviso State Bank, as Trustee under Trust | ) | |
| Agreement dated November 1, 1983, known as Trust | ) | |
| No. 6173; JACK RIVO; and UNKNOWN OTHERS, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | Honorable |
| (Greg Bedell, Fee Petitioner-Appellee and | ) | Kay M. Hanlon and |
| Cross-Appellant). | ) | Eileen O'Neill Burke, |
| _____ | ) | Judges Presiding. |
| | ) | |
| No. 1-17-0871 | ) | |
| | ) | |
| THE FOREST PRESERVE DISTRICT OF | ) | |
| COOK COUNTY, ILLINOIS, a Body Corporate | ) | |
| and Politic of the State of Illinois, | ) | |
| | ) | |
|     Plaintiff and Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL COMMUNITY BANK AND TRUST | ) | |
| COMPANY, an Illinois Corporation, as successor to | ) | |
| Maywood-Proviso State Bank, as Trustee under Trust | ) | |
| Agreement dated November 1, 1983, known as Trust | ) | |
| No. 6173; JACK RIVO; and UNKNOWN OTHERS, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| (Greg Bedell, Fee Petitioner-Appellant). | ) | |

Nos. 1-17-0680 and 1-17-0871 (consolidated)

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
PRESIDING JUSTICE REYES and JUSTICE LAMPKIN concurred in the judgment and opinion.

## OPINION

¶ 1    The Forest Preserve District Of Cook County, Illinois, a body corporate and politic of the State of Illinois (the District), originally filed this suit seeking to utilize its power of eminent domain to acquire certain property held in trust by defendant, Continental Community Bank And Trust Company, an Illinois corporation, as successor to Maywood-Proviso State Bank, as Trustee under Trust Agreement dated November 1, 1983, known as Trust No. 6173 (the Trustee), for the benefit of defendant, Jack Rivo (collectively referred to as Mr. Rivo, as he is both a named defendant and the beneficiary of the trust).

¶ 2    In its current appeal (no. 1-17-0680), the District seeks: (1) relief from a judgment for attorney's fees and costs awarded to Rivo's former attorney, fee petitioner Greg Bedell; and (2) reversal of the circuit court's orders denying the District leave to file a complaint for interpleader and denying its motion to declare invalid an attorney lien asserted by Mr. Bedell. In his cross-appeal, Mr. Bedell seeks reversal of the circuit court's denial of his petition to adjudicate and enforce his attorney's lien. Finally, in Mr. Bedell's separate appeal (no. 1-17-0680), which he describes as a "secondary, alternative remedy" should this court rule in the District's favor on its appeal, Mr. Bedell again seeks reversal of the circuit court's denial of his petition to adjudicate and enforce his attorney's lien.

¶ 3    With respect to the District's appeal, while we affirm the circuit court's decision to grant Mr. Bedell an award for attorney fees and costs, we vacate that part of the judgment determining the amount of fees and costs and remand for a recalculation of the proper amount of that award

- 2 -

under a theory of *quantum meruit*. In light of our resolution of this issue, all of the remaining issues raised by the parties on appeal are rendered moot.

¶ 4                                                                                                                                    I. BACKGROUND

¶ 5       This case has been the subject of many prior appeals to this court, yielding—*inter alia*—decisions affirming the circuit court's order granting summary judgment in favor of Mr. Rivo with respect to the condemnation complaint, as the District never passed a valid ordinance authorizing the acquisition of the property in question, and a decision dismissing for lack of jurisdiction a prior appeal from the circuit court's award of attorney fees. See *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, No. 1-12-2211 (Sept. 6, 2012) (appeal dismissed for lack of jurisdiction); *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2014 IL App (1st) 131652-U (appeal dismissed for lack of jurisdiction); *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2016 IL App (1st) 152145-U (summary judgment in favor of Mr. Rivo on condemnation complaint affirmed); *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 153512-U (appeal from attorney fee award dismissed for lack of jurisdiction). The orders entered by this court in those prior appeals, including the factual background set out therein, are incorporated herein by reference. Therefore, we restate here only those facts necessary to our resolution of the appeals currently pending before us.

¶ 6       This dispute dates to 2000, when the District began filing a number of eminent domain actions, including this suit in which the District sought to acquire 12.5 acres that were held by the Trustee for the benefit of Mr. Rivo. In 2003, Mr. Rivo agreed to give the District fee simple title to that property in exchange for $1.4 million, the circuit court entered an agreed judgment

order to that effect on March 6, 2003, and Mr. Rivo subsequently received the funds, less $50,000 that was retained in an escrow account and was to be paid when Mr. Rivo finally vacated the property.

¶ 7    Other property owners who had not entered into settlement agreements opposed the condemnation of their properties. They argued, successfully, that the District never had legal authority to condemn any of the relevant properties because the board had not properly adopted the necessary ordinance. See, *e.g.*, *Forest Preserve District of Cook County v. First National Bank of Evergreen Park*, Nos. 1-04-1536 and 1-04-3777 (consolidated) (2008) (unpublished order under Supreme Court Rule 23). On October 27, 2003—in light of the success these other property owners had in opposing condemnation of their properties—Mr. Rivo petitioned for relief from the agreed judgment order entered in this matter, pursuant to section 2-1401 of the Code of Civil Procedure (Code). 735 ILCS 5/2-1401 (2004).

¶ 8    Mr. Rivo was represented by Mr. Bedell in the section 2-1401 proceeding, pursuant to a retainer agreement executed in October 2003. With respect to the scope of Mr. Bedell's representation, the retainer agreement provided that Mr. Bedell's representation of Mr. Rivo would be "limited to seeking post judgment relief through the filing and prosecuting [of] a petition to vacate the settlement and judgment entered against you under 735 ILCS 5/2-1401." With respect to Mr. Bedell's compensation, the retainer agreement provided that Mr. Bedell would be paid "a non-refundable $1,200.00 retainer and that in the event of recovery, whether by settlement or trial, I will be paid 20% of the amount recovered. (The $1,200 will be deducted from the 20% contingency fee in the event of recovery.) If there is no recovery, you owe me no more fee than the retainer you paid." Mr. Rivo was also responsible for the payment of all "costs associated with this matter." On July 22, 2009, a written notice of attorney's lien detailing the

contingency provision contained in the retainer agreement was served by hand-delivery upon the District's general counsel.

¶ 9    The parties ultimately filed cross-motions for summary judgment on the section 2-1401 petition. In an order entered on February 15, 2012, the circuit court granted summary judgment in favor of Mr. Rivo, denied the District's cross-motion, vacated the agreed judgment order previously entered on March 6, 2003, and reinstated the condemnation case. The District attempted to appeal from this decision, but the appeal was dismissed for lack of appellate jurisdiction. *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, No. 1-12-2211 (Sept. 6, 2012).

¶ 10    Thereafter, on October 10, 2012, Mr. Bedell filed both a petition for attorney fees and costs, as well as a motion to withdraw as Mr. Rivo's attorney. In the petition for fees, Mr. Bedell contended that he had spent nearly 300 hours representing Mr. Rivo in the section 2-1401 proceedings, his usual and customary rate during that time ranged between $250 and $350 per hour, and $1,546.50 in costs had been incurred. Mr. Bedell therefore sought an award of $93,116.50 in fees and costs. The fee petition did not reference or rely on the contingency fee agreement contained in the retainer agreement in any way.

¶ 11    In the motion to withdraw, Mr. Bedell asserted that—in light of the summary judgment granted in favor of Mr. Rivo on the section 2-1401 petition—he had satisfied his obligations to Mr. Rivo under the original retainer agreement. Mr. Bedell also contended that, while he had consulted with Mr. Rivo regarding the prosecution of additional damages claims against the District, Mr. Rivo was unwilling to follow Mr. Bedell's advice and there had been a breakdown in communication between attorney and client. Noting these facts and his interest in the outcome of his fees petition, Mr. Bedell asked the circuit court for leave to withdraw as Mr. Rivo's

attorney and leave to file an appearance on his own behalf with respect to the fee petition. Mr. Bedell's motion to withdraw was granted on October 30, 2012.

¶ 12    Mr. Rivo subsequently obtained new counsel to represent him in prosecuting various claims against the District. Those claims included counterclaims stemming from the condemnation proceedings, including allegations that Mr. Rivo was entitled to millions of dollars in damages and to reacquire title from the District. Mr. Rivo's new counsel also filed a motion for summary judgment on the District's complaint for condemnation.

¶ 13    In response, the District filed a combined motion which sought to: (1) vacate the prior ruling granting Mr. Rivo's section 2-1401 petition, (2) strike Mr. Rivo's counterclaims, and (3) deny Mr. Rivo's motion for summary judgment in this condemnation action.

¶ 14    These motions were heard in 2013. In a three-part order entered on April 18, 2013, the circuit court denied the District's combined motion to vacate the prior ruling granting Mr. Rivo's section 2-1401 petition and to strike Mr. Rivo's counterclaims, and granted Mr. Rivo's motion for summary judgment on the condemnation complaint.

¶ 15    The District filed an appeal from the denial of its motion to vacate the prior ruling granting the section 2-1401 petition. However, this court once again dismissed the District's appeal for lack of appellate jurisdiction. *Forest Preserve District*, 2014 IL App (1st) 131652-U, ¶ 10.

¶ 16    Upon remand, Mr. Rivo filed a motion seeking a finding of enforceability and appealability with respect to the summary judgment ruling, pursuant to Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2015)), while the District filed a motion seeking reconsideration of the grant of summary judgment in favor of Mr. Rivo on its condemnation complaint. In an order entered on June 26, 2015, the circuit court denied the District's motion and

granted Mr. Rivo's motion, finding that there was no just reason to delay appeal of "[t]he 4-8-13 order granting summary judgment." The District appealed, and this court concluded that that the circuit court properly granted summary judgment in favor of Mr. Rivo on the condemnation complaint. *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2016 IL App (1st) 152145-U. The District filed a petition for leave to appeal that decision with our supreme court which, pursuant to a settlement agreement discussed below, was subsequently withdrawn on April 11, 2017.

¶ 17    Meanwhile, while Mr. Bedell's original petition for fees was stricken for failure to attach and account for the retainer agreement, he was granted leave to file an amended petition. The operative amended fee petition was filed on September 15, 2015. Therein, Mr. Bedell specifically relied upon section 70(a) of the Eminent Domain Act (the Act) (735 ILCS 30/10-5-70(a) (West 2014)), which provides for the award of fees and costs where it is determined that a plaintiff "cannot acquire the property by condemnation" and the defendant incurs such fees and costs "in defense of the complaint." He also primarily relied upon the retainer agreement to support a claim for fees and costs. According to Mr. Bedell's amended petition, the retainer agreement entitled him to a fee of 20% of any amount recovered. Further, Mr. Bedell asserted:

> "When this Court granted the 2-401 petition and vacated the order awarding the Defendant's property to the District, Bedell recovered for the Defendant his property. As a basis of the fees to be awarded under the Act, the Court should award the fee due from Defendant to Bedell under the fee agreement: using the conservative value of the Defendant's property, which the District determined in 2003 to be $1,400,000, Bedell is entitled to a fee of $280,000 (minus $1,200 already paid as retainer). Costs of $1,546.50 should also be awarded under the fee agreement."

In the alternative, the amended petition sought an award of fees and costs, to be calculated on an hourly basis as it was in the original fee petition, "if [the] Court determines that Bedell should not be paid in accordance with his fee agreement."

¶ 18    On September 30, 2015, the District filed a motion to dismiss the amended fee petition. Therein, the District asserted—*inter alia*—that Mr. Bedell was not entitled an award of fees as requested in the fee petition because: (1) he was not entitled to any attorney fees under the language of the Act, as he only represented Mr. Rivo in the section 2-1401 petition, (2) his claim for a fee based upon the contingency fee provision in the retainer agreement was improper, where Mr. Bedell was a terminated attorney and could therefore only recover based upon a theory of *quantum meruit*, and (3) even if the contingency fee provision was relevant to the calculation of any fee award, that provision was not yet triggered because title to the property had never been returned to Mr. Rivo, thus there had not been any "recovery."

¶ 19    In a written order entered on November 6, 2015, the circuit court denied the District's motion to dismiss and granted Mr. Bedell's amended petition for fees. The order specifically held that "judgment is entered against [the District] in the amount of $280,000 for attorneys fees and $1,546.50 in costs in favor of Gregory A. Bedell." A judgment for fees was also entered in favor of Mr. Rivo's new attorneys under section 70(a) of the Act. While the District previously appealed from the judgment entered in favor of Mr. Bedell, that appeal was dismissed for lack of appellate jurisdiction. *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 153512-U.

¶ 20    Meanwhile, this matter continued in the circuit court with respect to the counterclaims filed by Mr. Rivo's new counsel. In open court on December 9, 2016, the parties spread of record the general terms of a settlement agreement that had been reached with respect to the

counterclaims. The agreement was subsequently reduced to a written settlement agreement executed on February 6, 2017. As relevant to this appeal, and subject to the approval of the District's board, the written settlement agreement provided that:

1. The parties intended to settle all claims between them, with the specific exception of the judgment entered in favor of Mr. Bedell for attorney fees and costs, without any admission of liability

2. As full settlement of Mr. Rivo's counterclaims, the District would pay Mr. Rivo $1,650,000, plus whatever funds remained in the escrow account originally established in connection with the original agreed judgment order entered in 2003, subject to certain conditions that were contained in paragraph 17 of the settlement agreement (discussed below).

3. The settlement check would be made payable to Mr. Rivo and his current attorneys.

4. This payment would be paid as "additional just compensation" for the "taking" of the property, with the settlement agreement acknowledging that summary judgment on the District's condemnation complaint had been previously granted in Mr. Rivo's favor and upheld on appeal. Upon payment Mr. Rivo would execute a quit claim deed conveying the property to the District.

5. Specifically *including* the judgment previously entered in favor of Mr. Rivo's new attorneys and specifically *excluding* the judgment previously entered in favor of Mr. Bedell, Mr. Rivo and the District waived any claims against each other and would bear their own fees and costs.

6. The parties would move to vacate the judgment entered in favor of Mr. Rivo's new attorneys, and agreed to the entry of a "Stipulated Order of Dismissal with Prejudice"

with respect to the instant case, with the exception of any issues regarding the judgment entered in favor of Mr. Bedell. The District would also move to dismiss its petition for leave to appeal from this court's prior order affirming summary judgment in favor of Mr. Rivo on the condemnation complaint filed by the District.

¶ 21 In addition, as noted above, the settlement agreement contained further relevant provisions in paragraph 17, which provided:

"Upon approval of this Agreement by the FPD Board, and in the event that a final judgment is rendered in favor of Bedell and against the FPD for Bedell's attorneys fees in the instant matter, such judgment and interest shall be paid with the funds on deposit in the Escrow Account, as follows: If such judgment equals or exceeds the amount on deposit in the Escrow Account, the funds on deposit shall be used first (prior to FPD funds to satisfy the judgment. If the amount on deposit in the Escrow Account exceeds the judgment for fees, the judgment for fees shall be paid from the Escrow Account and any excess remaining on deposit in the Escrow Account after payment of the judgment for fees shall be paid by check to [Mr. Rivo and his current attorneys] as the remainder of the Settlement Award."

¶ 22 In an affidavit filed in connection with the settlement agreement, it was averred that the escrow account contained a total balance of $61,813.41 as of February 10, 2017.

¶ 23 On February 7, 2017, the District's Board approved the settlement agreement negotiated by the parties. Pursuant to that agreement, the court entered a "Stipulated Order of Dismissal with Prejudice" on February 10, 2017, which in relevant part provided: (1) this case was dismissed on the merits and with prejudice, (2) the award of attorney's fees entered in favor of Mr. Rivo's new attorneys was vacated, (3) with the exception of the judgment entered in favor of

Mr. Bedell, the parties would bear their own costs and fees, (4) the court made a finding that there was no just reason to delay the enforcement or appeal of the November 6, 2015, judgment entered in favor of Mr. Bedell, and (5) the circuit court retained jurisdiction to enforce the parties' settlement agreement.

¶ 24 However, in the days leading up to the entry of the dismissal order, the District filed a motion to declare Mr. Bedell's attorney's lien invalid, in which the District contended that the lien had not been properly served and, even if it was, such a lien was not enforceable against a public body such as the District. The District also filed a counterclaim for interpleader, in which the District asserted that, while Mr. Rivo claimed he was owed the entire settlement award, Mr. Bedell asserted that he had a contingency lien on that award pursuant to the attorney's lien he had previously served on the District. After further contending that it was a neutral, disinterested stakeholder with respect to the apportionment of the settlement award, the District asked to be allowed to tender the payment of the settlement award to the court and be dismissed from any further liability with respect to the settlement award.

¶ 25 In response, Mr. Rivo filed both a motion to enforce the settlement agreement and a motion to dismiss the District's interpleader counterclaim. With respect to the former, Mr. Rivo asserted that the District's attempt to file a counterclaim for interpleader and deposit the settlement award with the court constituted an anticipatory breach of the settlement agreement. With respect to the motion to dismiss, Mr. Rivo contended—*inter alia*—that the District was not a neutral stakeholder in light of the obligations it undertook with respect to Mr. Bedell's fees in the settlement agreement, and that the District's proposed course of action would in fact violate the terms of the settlement agreement.

¶ 26    On February 21, 2017, the circuit court: (1) granted the motion to dismiss the District's counterclaim for interpleader, (2) granted Mr. Rivo's motion to enforce the settlement agreement, and (3) denied the motion to declare Mr. Bedell's lien invalid. In the course of making these rulings, the circuit court concluded—*inter alia*—that Mr. Bedell's lien would not attach to the money paid to Mr. Rivo under the settlement agreement. Mr. Bedell filed a motion for clarification or reconsideration as to that finding, but that motion was denied.

¶ 27    Thereafter, Mr. Bedell filed a petition to adjudicate and enforce his attorney's lien on March 2, 2017. Therein, he asserted that his efforts "recovered" the property for Mr. Rivo, that this recovery could be directly traceable to the $1.65 million in settlement award the District was to pay Mr. Rivo, and that Mr. Bedell should therefore have a lien on that award for the payment of his contingency fee in excess of $280,000. After concluding that title to the property was never actually returned to Mr. Rivo, the circuit court essentially concluded that Mr. Bedell did not actually recover anything for Mr. Rivo such that Mr. Bedell could claim a lien on the settlement award pursuant to the attorney's lien.

¶ 28    As noted above, in its current appeal (no. 1-17-0680), the District seeks: (1) relief from a judgment for attorney's fees and costs originally awarded to Mr. Bedell on November 6, 2015; and (2) reversal of the circuit court's orders denying the District leave to file a counterclaim for interpleader and denying its motion to declare the attorney lien asserted by Mr. Bedell invalid. In his cross-appeal, Mr. Bedell seeks reversal of the circuit court's denial of his petition to adjudicate and enforce his attorney's lien against the settlement award. Finally, in Mr. Bedell's separate appeal (no. 1-17-0680), Mr. Bedell again seeks reversal of the circuit court's denial of his petition to adjudicate and enforce his attorney's lien, with the appeal having been filed in the alternative to the cross-appeal should this court view the matters "are more properly considered

as a separate appeal." In an order entered by this court on May 8, 2017, these appeals were consolidated.

¶ 29                                            II. ANALYSIS

¶ 30     On appeal, the parties present a host of arguments supporting their respective positions on the many issues raised in these consolidated appeals. However, with respect to the District's appeal, while we affirm the circuit court's decision to award Mr. Bedell attorney fees and costs under section 70(a) of the Eminent Domain Act, we vacate the resulting judgment only as to the amount of the award and remand for a recalculation of the proper amount of that award under a theory of *quantum meruit*. This conclusion proves to be dispositive of these appeals as, in light of our resolution of this issue, all of the remaining issues raised by the parties on appeal are rendered moot.

¶ 31     As our supreme court has long recognized, Illinois follows the "American rule" which prohibits prevailing parties from recovering their attorney fees from the losing party absent an express statutory or contractual provision. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64. Accordingly, statutes or contracts which allow for such fees are in derogation of the common law and must be strictly construed. *Id.*; *Powers v. Rockford Stop–N–Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001). "That is, we construe the fee-shifting provision 'to mean nothing more—but also nothing less—than the letter of the text.' " *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 255 (2010) (quoting *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004)). Construing a fee-shifting statute is an exercise in statutory construction. The rules applicable to this task are well-established, and were recently outlined in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

> "The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. [Citation.] A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. [Citation.]"

¶ 32    Thus, it is well recognized that whether a party may recover attorney fees and costs pursuant to a specific statutory provision is a question of law. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007) The circuit court's resolution of such a question is therefore subject to *de novo* review. *Id*. However, the circuit court's application of such statutory language to the facts of a particular case is reviewed for an abuse of discretion. See *Peleton, Inc. v. McGivern's Inc*., 375 Ill. App .3d 222, 226 (2007). An abuse of discretion occurs when no reasonable person could take the view adopted by the circuit court. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21. Thus, whether the court has authority to grant attorney fees is a question of law we review *de novo*, whereas a court's decision to as to whether to award authorized fees is reviewed for an abuse of discretion. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 34.

¶ 33    In light of the above, we first address the District's contention that section 70(a) of the Act does not grant the circuit court authority to award attorney fees and costs for the work Mr. Bedell did on Mr. Rivo's behalf. The relevant statutory language provides that, with respect to a

condemnation complaint, "if the final judgment is that the plaintiff cannot acquire the property by condemnation, the court shall, upon the application of the defendants or any of them, enter an order in the action for the payment by the plaintiff of all costs, expenses, and reasonable attorney fees paid or incurred by the defendant or defendants in defense of the complaint, as upon the hearing of the application shall be right and just, and also for the payment of the taxable costs." 735 ILCS 30/10-5-70(a) (West 2014).

¶ 34    The District specifically contends that this statutory language clearly authorizes an award fees and costs *only* by the circuit court presiding over a condemnation complaint, *only* where the final judgment entered by that court concludes that the plaintiff cannot acquire the property by condemnation, and then *only* for fees and costs actually paid or incurred by a condemnation defendant for actions taken both in defense of the condemnation complaint and within the condemnation proceeding itself. Noting that Mr. Bedell only performed work on Mr. Rivo's behalf in the context of the section 2-1401 proceeding, that section 2-1401 proceedings are generally considered new, separate proceedings, and that section 2-1401 itself contains no provision for the award of attorney fees, the District therefore contends that the circuit court improperly concluded that Mr. Bedell's amended fee petition could satisfy these statutory requirements. The District also asserts that the fees and costs were awarded to Mr. Bedell not within the condemnation proceedings, but rather within the section 2-1401 proceeding.

¶ 35    With respect to these contentions, it is indeed undisputed that all of Mr. Bedell's work on Mr. Rivo's behalf took place within the context of the section 2-1401 proceeding. Furthermore, it is also true that the filing of a petition pursuant to section 2–1401 of the Code, which provides a procedure by which final orders, judgments, and decrees may be vacated after 30 days from their entry (735 ILCS 5/2–1401 (West 2014); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986)), is

generally considered to constitute a new proceeding and not a continuation of the original cause of action (*Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002); *Mills v. McDuffa*, 393 Ill. App. 3d 940, 946 (2009)). Finally, we also agree that section 2-1401 of the Code does not, itself, contain a fee-shifting provision. See 735 ILCS 5/2–1401 (West 2014). However, while we agree with these assertions made by the District, we do not agree with the remainder of its contentions or its ultimate conclusion regarding the circuit court's authority to award fees and costs to Mr. Bedell under section 70(a) of the Act.

¶ 36 For example, while the District contends that the ultimate merits of its condemnation complaint and the award of fees to Mr. Bedell were issues addressed within the section 2-1401 proceeding in this matter, these assertions are simply incorrect. Here, summary judgment was entered in Mr. Rivo's failure with respect to the section 2-1401 petition on February 15, 2012, pursuant to an order in which the circuit court granted summary judgment in favor of Mr. Rivo, denied the District's cross-motion, vacated the agreed judgment order previously entered on March 6, 2003, and reinstated the condemnation case. See *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2014 IL App (1st) 131652-U (noting that pursuant to the 2012 order, the condemnation case was reopened and reinstated).

¶ 37 It was only thereafter, *well after the condemnation case was reinstated*, that the circuit court presiding over the condemnation case: (1) granted summary judgment on the District's condemnation complaint in favor of Mr. Rivo on April 18, 2013, (2) made that ruling final and appealable on June 26, 2015, and (3) granted Mr. Bedell's amended fee petition on November 6, 2015, an order made final and appealable upon the entry of the stipulated order of dismissal on February 7, 2017. Thus, the record clearly establishes that, in full compliance with section 70(a) of the Act, the court presiding over the condemnation case entered both a final judgment finding

that the District cannot acquire the Mr. Rivo's property by condemnation and, thereafter, an order in that same action for the payment of Mr. Rivo's attorney fees and costs. See 735 ILCS 30/10-5-70(a) (West 2014).

¶ 38    Furthermore, we also reject the District's contention that, because Mr. Bedell represented Mr. Rivo solely in the context of the separate, section 2-1401 proceeding, an award for Mr. Bedell's fees and costs is not authorized by the statute because they were not incurred by Mr. Rivo "in defense" of the condemnation complaint, and within the condemnation proceeding, as the District contends is required by section 70(a) of the Act.

¶ 39    It does not appear that this specific question—*i.e.*, whether section 70(a) of the Act allows for an award of fees and costs incurred in connection with a section 2-1401 proceeding arising out of a condemnation proceeding—has previously been addressed by the appellate court. However, we do find guidance in prior decisions that have addressed the propriety of an award of fees and costs incurred in appeals from circuit court decisions in condemnation cases.

¶ 40    In *Department of Public Works & Buildings v. Lanter*, 15 Ill. 2d 33, 39-40 (1958), our supreme court addressed whether a prior, but substantially similar, version of section 70(a) of the Act authorized the payment of the defendants' attorney fees that were incurred in connection with the defense of an appeal filed by a public entity from the circuit court's dismissal of a condemnation complaint. Our supreme court first recognized that the terms of the substantially similar prior version of section 70(a) of the Act "do not restrict the attorney fees payable to those incurred in the trial court." *Id*. at 40. Our supreme court then concluded that "[t]he plain intent of that provision is to pay defendants for all reasonable attorney fees incurred in defense of the condemnation petition ***. Where that defense must be made, not merely in the trial court, but also in a reviewing court because the Department has taken an appeal to that court, and

- 17 -

defendant has no choice in the matter, then the attorney fees incurred in connection with that appellate court proceeding must be deemed to be an integral part of the defense of the condemnation petition, and should be recoverable under the statute." *Id*. Our supreme court further reasoned that "[s]uch an interpretation in no way encourages prolonged condemnation litigation, yet fairly compensates defendant for attorney fees if he is compelled to defend beyond the trial court; and at the same time it is clearly consistent with the terms of the statute." *Id*. at 40-41.

¶ 41 Thereafter, in *Village of Cary v. Trout Valley Ass'n*, 297 Ill. App. 3d 63, 64-65 (1998), the appellate court considered whether another prior, but substantially similar, version of section 70(a) of the Act authorized an award of attorney fees and costs incurred by a defendant in connection with the defendant's own appeal from the circuit court's denial of a motion to dismiss a condemnation complaint. In finding that the statute did authorize such an award, and relying on *Lanter*, the court first noted that the prior, substantially similar version of section 70(a) "in no way restricts the property owner's right to recover appellate fees and expenses." *Id*. at 68.

¶ 42 Then, the court reasoned that the critical inquiry is whether the defendant was " 'compelled to defend beyond the trial court' " (*id*. at 69 (quoting *Lanter*, 15 Ill. 2d at 40-41)) such that "the appeal was taken "in defense of the complaint' " (*id*. at 68 (quoting a prior version of section 70(a) of the Act). Ultimately, the appellate court concluded that because the "only means of protecting its property from an unlawful condemnation was to take the appeal," the defendant's appeal in that case "was necessary to its defense of the *** condemnation petition." *Id*. at 69. Therefore, the court concluded that the defendant was "entitled to recover all costs, expenses, and reasonable attorney fees incurred in prosecuting that appeal." *Id*.

¶ 43    Here, the District's condemnation complaint was originally resolved by the final, agreed judgment order entered in 2003. More than 30 days later, but less than 2 years thereafter, Mr. Rivo learned that the District never had legal authority to condemn his property because its board had not properly adopted the necessary ordinance. In such circumstances, Mr. Rivo's only means of protecting his property from an unlawful condemnation was to file a section 2-1401 petition. See 735 ILCS 5/2–1401 (West 2014) (containing the sole procedure in the Code by which final orders, judgments, and decrees may be vacated after 30 days, but less than 2 years, from their entry).

¶ 44    A section 2-1401 proceeding does indeed represent a new proceeding and not a continuation of the original cause of action. However, the above authority clearly supports our conclusion that such a proceeding—being one defendant was compelled to undertake to protect his property—is still one prosecuted in defense of the condemnation complaint despite the fact that it reaches beyond the original circuit court condemnation proceedings. Indeed, because the plain language of section 70(a) does "not restrict the attorney fees payable to those incurred in the trial court" (*Lanter*, 15 Ill. 2d at 40), precluding condemnation defendants such as Mr. Rivo from recovering for fees and costs incurred in successful section 2-1401 proceedings would improperly depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent (*Hendricks*, 2015 IL App (3d) 140858, ¶ 14). In contrast, interpreting section 70(a) as we do here construes the "fee-shifting provision 'to mean nothing more—but also nothing less—than the letter of the text.' " *Bright Horizons*, 403 Ill. App. 3d at 255 (quoting *Largent*, 353 Ill. App. 3d at 952).

¶ 45    Thus, we conclude that the circuit court properly concluded that Mr. Bedell's work in the section 2-1401 proceeding represented costs, expenses, and reasonable attorney fees paid or

incurred by Mr. Rivo in defense of the condemnation complaint filed by the District, such that it was compensable under section 70(a) of the Act.

¶ 46    Having found that the circuit court had the authority to enter an award of fees and costs for Mr. Bedell's work, we now turn to the question of whether the amount of that award constituted an abuse of discretion.

¶ 47    In this case, Mr. Bedell's amended fee petition primarily asserted that "the Court should award the fee due from Defendant to Bedell under the [contingency] fee agreement: using the conservative value of the Defendant's property, which the District determined in 2003 to be $1,400,000, Bedell is entitled to a fee of $280,000 (minus $1,200 already paid as retainer). Costs of $1,546.50 should also be awarded under the fee agreement." In a written order entered on November 6, 2015, the circuit court granted Mr. Bedell's amended petition for fees and costs and pronounced that "judgment is entered against [the District] in the amount of $280,000 for attorneys fees and $1,546.50 in costs in favor of Gregory A. Bedell."[1] Thus, in 2015, the circuit court granted an award of fees and costs premised upon the contingency fee provision in the retainer agreement executed in 2003, despite the fact that in October, 2012, Mr. Bedell had withdrawn as Mr. Rivo's attorney in 2012. We find this to have been an abuse of discretion, as it improperly compensated Mr. Bedell based upon a contingency fee agreement that was no longer in force.

¶ 48    When an attorney-client relationship that was originally established under a contingent fee contract terminates, the contract no longer exists and neither party can therefore seek to enforce the terms of the nonexistent contract. *McGill v. Garza*, 378 Ill. App. 3d 73, 76 ( 2007);

---

[1] The circuit court's judgment did not specifically account for the $1,200 retainer already paid to Mr. Bedell.

*Kannewurf v. Johns*, 260 Ill. App. 3d 66, 75-76 (1994); *Leoris & Cohen, P.C. v. McNiece*, 226 Ill. App. 3d 591, 595–96 (1992). Because Mr. Rivo was no longer obligated to pay, and Mr. Bedell was no longer entitled to be compensated, pursuant to the terminated contingency fee agreement between Mr. Rivo and Mr. Bedell, such a contingent fee was not actually paid or incurred "in defense" of the condemnation complaint. It was therefore improper for the circuit court to rely solely upon that agreement as a basis for calculating the award of fees under section 70(a) of the Act.

¶ 49    However, when the attorney has withdrawn and the court finds the attorney justifiably withdrew from the case, then the attorney is entitled to proceed on a claim to recover fees based on *quantum meruit*. *McGill*, 378 Ill. App. 3d at 76-77; *Kannewurf*, 260 Ill. App. 3d at 73; *Leoris & Cohen, P.C.*, 226 Ill. App. 3d at 597; *Reed Yates Farms, Inc. v. Yates*, 172 Ill. App. 3d 519, 533 (1988). Here, Mr. Bedell's motion to withdraw contended that his request was based upon a disagreement as to the strategy going forward with respect to seeking damages from the District and a breakdown in communication. Courts have recognized these to be justifiable reasons to withdraw, entitling the withdrawing attorney to recover reasonable fees based on *quantum meruit*. See *McGill*, 378 Ill. App. 3d at 76-77 (collecting cases). In this case, therefore, Mr. Rivo did in fact actually incur fees and costs "in defense" of the condemnation complaint—albeit payable to Mr. Bedell only on a theory of *quantum meruit*—such that an award of fees and costs to Mr. Bedell was proper.

¶ 50    Therefore, while we affirm the circuit court's decision to award Mr. Bedell a judgment for fees and cost under section 70(a) of the Act, we vacate that part of the judgment determining the amount of fees and costs and remand for a recalculation of the proper amount of that award under a theory of *quantum meruit*. Under the theory of *quantum meruit*, the trial court is literally

to award the attorney " 'as much as he deserves.' " *Kannewurf*, 260 Ill. App. 3d at 74 (quoting *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992)). We remand, because the circuit court" has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case." *Kannewurf*, 260 Ill. App. 3d at 74. "In making its determination, the circuit court should "assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." (Emphasis omitted.) *Id*. The circuit court should also ensure that both the $1,200 retainer already paid by Mr. Rivo to Mr. Bedell and the provisions contained in paragraph 17 of the February 6, 2017, settlement agreement are accounted for in its analysis.

¶ 51 Finally, while the parties have raised a number of other issues, we find our resolution of the above matters renders them moot. See *In re Jonathan P*., 399 Ill. App. 3d 396, 400 (2010). (" 'An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party.' [Citation.] Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. [Citation.]").

¶ 52 As noted above (*supra* ¶¶ 24, 28), all of the other issues raised on appeal challenge various rulings made by the circuit court that fundamentally concern the proper disposition of the attorney lien asserted by Mr. Bedell against the settlement award. However, Mr. Bedell's assertion of his attorney lien was always premised upon his purported right to a lien based on the

contingency fee provision of the retainer agreement. Because we have already concluded that the retainer agreement no longer exists and that Mr. Bedell can therefore no longer seek to enforce the terms of the nonexistent contract, all of the circuit court's rulings with respect to the proper disposition of such a purported lien are moot.

¶ 53                                    III. CONCLUSION

¶ 54    For the foregoing reasons, while we affirm the circuit court's decision to award Mr. Bedell fees and cost under section 70(a) of the Act, we vacate the resulting judgment only as to the amount of the award and remand for a recalculation of the proper amount of that award under a theory of *quantum meruit*.

¶ 55    Affirmed in part and vacated in part.

¶ 56    Cause remanded with directions.