In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 19-2241

MERLE L. ROYCE,

*Plaintiff,*

*v.*

MICHAEL R. NEEDLE P.C.,

*Defendant-Appellant,*

*v.*

COZEN O'CONNOR,

*Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-00259 — **Rebecca R. Pallmeyer**, *Chief Judge.*

———————————

ARGUED JANUARY 14, 2020 — DECIDED FEBRUARY 20, 2020

———————————

Before WOOD, *Chief Judge*, and ROVNER and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. After Michael R. Needle P.C. ("Needle P.C.") went months without counsel in a fee dispute

action and was on the verge of a default judgment, three part-
ners from the law firm Cozen O'Connor stepped in to repre-
sent Needle P.C. Their representation successfully staved off
the pending default motion but was otherwise short-lived.
Less than three months after appearing as counsel, Cozen
O'Connor understandably withdrew due to irreconcilable
differences and a total breakdown of the attorney–client rela-
tionship. Cozen O'Connor sought to be compensated for its
work, though, under a *quantum meruit* theory and perfected
an attorney's lien. The district court then granted Cozen
O'Connor's petition to adjudicate and enforce the lien. Be-
cause Cozen O'Connor is entitled to recover in *quantum meruit*
and the district court properly concluded that the petitioned
fees were reasonable, we affirm.

## I. Background

This appeal represents just a small, discrete slice of the un-
derlying litigation—the activities at issue here span only three
months out of a three-and-a-half-year row.[1] That action is a
dispute over attorney's fees between an attorney, Michael R.
Needle of Needle P.C., on the one side, and his former co-
counsel, Merle L. Royce, and their former clients on the other.

In short, after Needle and Royce settled a lawsuit on behalf
of their clients for $4.2 million, Needle argued the attorneys
(i.e., he and Royce) were entitled to $2.5 million—or about
sixty percent—of the settlement as attorney's fees. But the par-
ties' contingent fee agreement plainly provided, and the dis-
trict court held, that the attorneys were entitled only to one-
third of the settlement as their fee. Needle and Royce also

___

[1] This is one of two appeals that we decided today regarding Needle's
efforts to obtain a larger portion of the settlement.

disagreed over the appropriate split of the aggregate attorney's fee pursuant to a co-counsel agreement, which the district court also determined. We affirmed both of those decisions in a separate appeal.

During the course of the fee dispute, however, Needle P.C. went long stretches of time without an attorney of record. The court intermittently permitted Needle to appear pro hac vice and represent Needle P.C., but Needle invariably failed to adhere to deadlines, disobeyed court orders, and generally engaged in "obstructionist" and vexatious tactics that delayed the case. So Needle's admission pro hac vice was revoked, on more than one occasion, and the district court numerous times ordered Needle to retain independent counsel to represent Needle P.C.

Finally, with no clear end in sight and Needle's refusal to obtain counsel for Needle P.C. bringing the case to a standstill, Royce filed a motion for default on account of Needle P.C.'s failure to defend. Needle was again ordered to find an attorney for Needle P.C. and was given thirty days to do so. On the last day of the deadline, three partners from Cozen O'Connor filed appearances for Needle P.C.

When Cozen O'Connor first entered the case, it had been going on for more than two-and-a-half years and had over seven hundred docket entries. Cozen O'Connor, predictably, spent a great deal of time familiarizing itself with the massive record to even take on the representation. The attorneys also engaged Royce in settlement discussions, which included participating in settlement conferences. Cozen O'Connor then sought and was granted leave to file a sur-reply in opposition to the motion for default. As a result of Cozen O'Connor

appearing and filing the sur-reply, Needle P.C. avoided default judgment.

But less than three months after first appearing, Cozen O'Connor moved to withdraw as counsel for Needle P.C., citing irreconcilable differences. No small part of those differences was the fact that Needle had given another law firm, Mayer Brown—who represented one of the former clients—a lien on any Needle P.C. recovery from the underlying lawsuit so that Mayer Brown would continue to represent that client. It is not clear why Needle did this, and the district court too was "puzzled" by it, but the reason makes no difference here. The bottom line is that Mayer Brown asserted a priority interest in the same source of funds that Cozen O'Connor sought to be paid out of under a contingent fee arrangement. Therefore, before Cozen O'Connor withdrew from the case, it served a Notice of Attorneys' Lien pursuant to the Illinois Attorneys Lien Act via certified mail. *See* 770 ILCS 5/1.

After it withdrew, Cozen O'Connor filed a petition to adjudicate and enforce its attorney's lien and for an award of its fees and costs. The petition sought attorney's fees in the amount of $124,458.00, which was broken down by hours and rates, and costs in the amount of $2,205.66, for an aggregate amount of $126,663.66 in fees and costs. Both Needle P.C. and Mayer Brown filed objections to Cozen O'Connor's petition. The district court overruled Needle P.C.'s objections and specifically found that, contrary to Needle P.C.'s claims, even after Cozen O'Connor gave notice of its intent to withdraw, the firm "continued vigorous efforts on [Needle P.C.'s] behalf—drafting pleadings, appearing in court, engaging in settlement efforts, and communicating with the client—until the court granted leave to withdraw." And as to Mayer Brown's

objection, the court found, in a well-reasoned opinion, that Mayer Brown's prior perfected lien was superior and enforceable against Cozen O'Connor's later-filed lien. The priority of the liens was also later separately and extensively briefed by Cozen O'Connor and Mayer Brown, and Cozen O'Connor does not appeal the district court's determination that Mayer Brown's lien was superior to its attorney's lien.

## II. Discussion

Needle P.C. haphazardly challenges the district court's determination that Cozen O'Connor is entitled to an attorney's lien and the award of fees and costs without an evidentiary hearing. After wading through a sea of factual misrepresentations, we conclude that none of the legal arguments have merit.

### A. Cozen O'Connor's *quantum meruit* claim

Needle P.C. retained Cozen O'Connor pursuant to a contingent fee agreement, but Cozen O'Connor withdrew before any contingency came to pass. The contract stated that if Needle P.C. terminates the representation then Cozen O'Connor will have a claim for *quantum meruit* but was silent on any potential fee in the event Cozen O'Connor withdraws. Thus Needle P.C. argues—without citation to authority—Cozen O'Connor cannot recover any fee. But after Cozen O'Connor terminated the representation, the agreement was no longer operative here.

"When an attorney-client relationship that was originally established under a contingent fee contract terminates, the contract no longer exists and neither party can therefore seek to enforce the terms of the nonexistent contract." *Forest Pres. Dist. of Cook Cty. v. Cont'l Cmty. Bank & Tr. Co.*, 98 N.E.3d 459,

472 (Ill. App. Ct. 2017). Instead, "when the attorney has withdrawn and the court finds the attorney justifiably withdrew from the case, then the attorney is entitled to proceed on a claim to recover fees based on *quantum meruit*." *Id.*; *Kannewurf v. Johns*, 632 N.E.2d 711, 716 (Ill. App. Ct. 1994) (holding attorney that withdrew from case "was entitled to the reasonable value of his services up to the date of withdrawal"); *Leoris & Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1065 (Ill. App. Ct. 1992) ("If the court finds that the plaintiff justifiably withdrew from the case, then the plaintiff will be allowed to proceed on its claim for fees on a *quantum meruit* basis."); *Reed Yates Farms, Inc. v. Yates*, 526 N.E.2d 1115, 1124–25 (Ill. App. Ct. 1988) ("We perceive no reason why the *quantum meruit* standard should not also apply in situations where an attorney withdraws from representation of a client for good cause."). Under a *quantum meruit* theory, the trial court is to award, as the term literally means, "as much as he deserves." *Lee v. Ingalls Mem'l Hosp.*, 597 N.E.2d 747, 749 (Ill. App. Ct. 1992).

Cozen O'Connor's withdrawal was justifiable under the circumstances and it is, therefore, entitled to recover on a *quantum meruit* basis. Needle P.C. retained Cozen O'Connor on a contingency arrangement whereby Cozen O'Connor's fees were to come solely from any Needle P.C. recovery in the fee action. Unbeknownst to Cozen O'Connor at the time, however, Needle P.C. had already given Mayer Brown a secured interest in any recovery from that action. Thus, Cozen O'Connor faced the stark reality that it would not be paid for its continued legal services even if Needle P.C. recovered money. In *Reed Yates Farms*, the Illinois Appellate Court held that a client's refusal to pay attorney fees during the course of litigation was good cause to withdraw and the attorney was entitled to compensation on a *quantum meruit* basis.

526 N.E.2d at 1120–21. We see no practical difference here. Needle P.C. effectively refused to pay any attorney's fee to Cozen O'Connor, just without Cozen O'Connor knowing it.

Additionally, in its motion to withdraw, Cozen O'Connor cited irreconcilable differences that prevented it from continuing its representation. Needle P.C. has never contested this assertion, either in the district court or even now on appeal. Irreconcilable differences and a breakdown of the attorney–client relationship provide good cause to withdraw that allows the attorney to recover the value of his or her services in *quantum meruit*. *McGill v. Garza*, 881 N.E.2d 419, 421, 423 (Ill. App. Ct. 2007); *Leoris & Cohen*, 589 N.E.2d at 1065.

## B. Illinois's attorneys lien statute

Needle P.C. next asserts that, even if Cozen O'Connor can recover *quantum meruit* fees, Cozen O'Connor cannot have an enforceable attorney's lien at all because its actions did not "result in recovery" as Needle P.C. contends is required by the Illinois lien statute.

The Illinois Attorneys Lien Act creates a "means of enforcing the right of a lawyer to his fee" in the form of "a lien in favor of the lawyer on the proceeds of the litigation or its settlement." *Anastos v. O'Brien*, 279 N.E.2d 759, 763 (Ill. App. Ct. 1972). The statute provides that attorneys "shall have a lien upon all claims, demands and causes of action … which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee" for the services rendered. 770 ILCS 5/1. Such lien attaches "to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the

notice." *Id*. Because the Illinois attorneys lien is a statutory creature, attorneys must strictly comply with that statute's requirements for perfecting a lien. *People v. Philip Morris, Inc.*, 759 N.E.2d 906, 911 (Ill. 2001). Needle P.C. does not challenge Cozen O'Connor's compliance with the Attorneys Lien Act to perfect its lien. And "[o]nce the attorney's lien is perfected, upon petition 'any court of competent jurisdiction' may adjudicate the lien." *Id*. (quoting 770 ILCS 5/1).

Needle P.C. nevertheless argues that the district court erred because it enforced Cozen O'Connor's lien without first finding that the firm's actions resulted in any recovery. It relies on *Robert S. Pinzur, Ltd. v. The Hartford*, 511 N.E.2d 1281 (Ill. App. Ct. 1987), to support its so-called resulted-in-recovery test. As pertinent here, the *Pinzur* court interpreted the Act's phrase that an attorney's lien shall attach to any money or property "recovered, *on account* of such suits, claims, demands or causes of action." *Id*. at 1288. "[W]hen the Act says the recovery is to be 'on account' of various actions," the court "believe[d] it means the recovery must be a result of action taken by the attorney." *Id*. "To construe the statutory language otherwise would result in unjust windfalls for attorneys in cases where a defendant acts wholly on its own and no attorney services were rendered." *Id*. In other words, there must be some relation between the attorney's activities for which the attorney seeks a fee and the suit in which the money or property is recovered.

But Needle P.C. takes *Pinzur*'s "result of action" language in isolation and morphs it into a requirement that the attorney's actions must have "resulted in recovery," or "substantially or primarily produced" the recovery. First, "result of action" is not synonymous with "resulted in recovery," which

implies a but-for causation standard. Needle P.C. does not offer any support for such a standard. And as we just explained, the *Pinzur* court was concerned with a situation in which an attorney rendered absolutely no services in the case, not where an attorney in fact rendered services.

Second, and more fundamentally, Needle P.C. is conflating the requirements for an attorney's lien under Illinois law and a charging lien under Pennsylvania law. In determining the priority between Cozen O'Connor's lien and Mayer Brown's lien, the district court also discussed whether Cozen O'Connor had an enforceable charging lien under Pennsylvania law (because Needle P.C. is located in Pennsylvania). The court stated that Cozen O'Connor had failed to establish that its services "substantially or primarily secured the fund out of which it sought to be paid," which is a requirement of Pennsylvania charging lien law. So Needle P.C. attempts to take this finding and graft it on to Illinois law. It cannot do that. These are two different types of liens under two different states' laws.

Finally, not only is Needle P.C.'s argument flawed legally, it is flawed factually as well. There is no question that Needle P.C.'s ultimate recovery was in no small part a result of Cozen O'Connor's actions in the matter. Recall, Needle P.C. was on the verge of default judgment and was down to its final day to retain counsel—Cozen O'Connor's representation alone let Needle P.C. stay in the game. The district court found that Cozen O'Connor "invested substantial time and effort in representing [Needle P.C.] and successfully defending it against Royce's default motion," which allowed Needle P.C. "to continue pressing its claim that it was entitled to more than fifty percent of the fund." More specifically, the district court also

found that Cozen O'Connor's "services were substantially related to the court's determination of the share of those funds ultimately awarded to [Needle P.C.], and in this sense, resulted in a significant award for Needle." Cozen O'Connor has a valid attorney's lien.

**C. Reasonableness of Cozen O'Connor's fees**

Because Cozen O'Connor is entitled to recover its fees in *quantum meruit*, Needle P.C. seeks an evidentiary hearing on the reasonableness and amount of the claimed services. We review a district court's decision not to hold an evidentiary hearing on attorney's fees for an abuse of discretion. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 652 (7th Cir. 2011); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 709 (7th Cir. 2001). Further, it is not an abuse of discretion to decline to conduct an evidentiary hearing "that would only address arguments and materials already presented to the court in the parties' briefings." *Pickett*, 664 F.3d at 652.

Under Illinois law, the trial court has "broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case." *Kannewurf*, 632 N.E.2d at 716; *see also Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 911 N.E.2d 1180, 1187 (Ill. App. Ct. 2009) ("The trial court has broad discretionary powers in awarding reasonable attorney fees and its determination is based on the evidence presented by the parties."). The relevant factors include "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that

type of work in the community, and the benefits resulting to the clients." *Kannewurf*, 632 N.E.2d at 717 (emphasis omitted).

The district court was intimately familiar with the unique difficulties this case presented and the work that Cozen O'Connor did in the short time that it represented Needle P.C. The court noted Cozen O'Connor's "vigorous efforts on [Needle P.C.'s] behalf—drafting pleadings, appearing in court, engaging in settlement efforts, and communicating with the client"—continued even after it moved to withdraw and until the court granted the motion. And, in several other instances, the district court remarked that Cozen O'Connor "worked diligently" for Needle P.C., "engaged in substantial efforts reviewing the file and preparing pleadings," "made a meaningful effort to analyze [Needle's reconstructed time records] and present them to the court," and even recognized that "the representation was a challenging one."

Further, Cozen O'Connor submitted detailed billing records along with an affidavit explaining the requested fees. And Needle P.C. filed objections to the reasonableness of those fees, which the district court considered and rejected. A district court is not required to hold an evidentiary hearing on attorney's fees where a party has an opportunity to respond and make specific objections to the fee petition. *See Small*, 264 F.3d at 709. Here, the only purpose a hearing would have served would be for Needle P.C. to simply reargue its objections. Based on its deep understanding of the case and the materials submitted by the parties, the district court appropriately determined the reasonableness of Cozen O'Connor's fees without an evidentiary hearing.

### III. Conclusion

Cozen O'Connor withdrew from the representation of Needle P.C. for good cause and is therefore entitled to *quantum meruit* recovery. The district court correctly granted Cozen O'Connor's petition to enforce its attorney's lien and properly awarded the firm its reasonable fees. We affirm the district court's judgment.