In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3478

IN RE:

ANDREA H. MEYERS,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-cv-0323-MJR—**Michael J. Reagan**, *Judge.*

ARGUED FEBRUARY 26, 2010—DECIDED AUGUST 2, 2010

Before FLAUM and WOOD, *Circuit Judges*, and ST. EVE, *District Judge.*[*]

WOOD, *Circuit Judge.* This case involves a recurring question under the bankruptcy laws: what belongs in the bankruptcy estate? In general, assets that were acquired before the time when the bankruptcy petition is filed—so-called pre-petition assets—are available to satisfy pre-petition debts. Overgeneralizing, one can say that post-petition assets belong to the debtor and are not encumbered by any liabilities that were discharged

[*] Hon. Amy J. St. Eve, District Judge for the Northern District of Illinois, sitting by designation.

in bankruptcy. By the same token, any liabilities incurred by the debtor post-petition may not be discharged in the bankruptcy proceeding, nor should the bankruptcy process compel the pre-petition creditors to bear any burden as a result of these post-petition obligations.

Allocating assets and liabilities to the correct side of the pre- and post-petition line is usually a straightforward task, but occasionally the job becomes challenging. Debtor Andrea Meyers's case falls in the latter category. The question we must resolve in her appeal is how best to allocate post-petition tax refunds when the debtor filed her bankruptcy petition in the middle of the tax year. The bankruptcy court used a mechanical system known as the *"pro rata* by days" method to calculate the proportion of the refunds that belonged to the pre-petition asset pool. Meyers filed her petition approximately 73% of the way through the tax year, and accordingly, using that method, 73% of her tax refund qualified as a pre-petition asset. In taking that approach, the bankruptcy court followed a well-trodden path. Meyers, however, thought that it was the wrong path and took an appeal to the district court. That court affirmed the bankruptcy court, and now Meyers is before this court seeking to persuade us that the estate received too much. While we recognize that the *pro rata* method may not be appropriate for all cases, we find that the bankruptcy court properly applied it here, and so we affirm.

## I

The facts of this case are undisputed. Meyers filed a petition for relief under Chapter 7 of the Bankruptcy Code

on September 25, 2007. September 25 was the 268th day of 2007, meaning that approximately 73.42% of the year had passed by then. At that point, Meyers's pay stub indicates that she had earned $37,133.43 in 2007, with gross taxable income of $33,855.26. Meyers's total 2007 income turned out to be $47,256.42 and total 2007 gross taxable income was $44,136; the September 25 figures therefore represent about 78.6% and 76.7% of the annual totals, respectively. Meyers's federal and state withholding tracked her income; her September 25 pay stub reflects that about 77% of her total 2007 withholding accrued prior to that date. For ease of reference, we have presented this information about Meyers's 2007 income and withholding in the table below:

**Meyers's 2007 Income and Withholding**

| Category | 2007 Totals | 2007 Pre-Petition | 2007 Pre-Petition Ratio |
|---|---|---|---|
| Gross Income | $47,256.42 | $37,133.43 | 78.6% |
| Gross Taxable Income | $44,136.00 | $33,855.26 | 76.7% |
| Federal Withholding | $5,983.00 | $4,634.91 | 77.5% |
| State Withholding | $1,727.00 | $1,330.00 | 77.0% |

The next important step for our purposes occurred when Meyers filed her 2007 federal and state income tax returns. Meyers's federal tax return reported that she owed $2,661 and had withheld $5,983. On that basis, she requested a refund of $3,322. Her Missouri tax return reported an overpayment of $216 for which she also requested a refund. (Meyers works in Missouri, but she is a resident of Illinois and filed her bankruptcy petition in Illinois, which explains why this case ended up here rather than the Eighth Circuit.) In 2008, months after filing her bankruptcy petition, Meyers received federal and state tax refunds for 2007 totaling $3,538.

This $3,538 is the subject of Meyers's appeal. In August 2008, Trustee Laura K. Grandy (the "Trustee") filed a motion for turnover of the bankruptcy estate's share of Meyers's 2007 federal and state tax refunds. See 11 U.S.C. § 542. Conceptually, the Trustee regarded the amounts withheld in excess of the taxes due as a form of enforced savings; if Meyers's withholding had been exactly equal to the taxes she owed, and she had put the remainder in a savings account during the pre-petition period, it would be plain that the amount saved would belong in the bankruptcy estate. Relying on this theory, the Trustee asserted that the bankruptcy estate was entitled to the pre-petition portion of each refund, calculated based on the *pro rata* by days method. Since Meyers filed for bankruptcy 73.42% of the way through the tax year, this method yielded $2,597.60 as the portion of the refunds that belonged to the estate. The Bankruptcy Code allows states to pass laws creating exemptions from the bankruptcy estate. 11 U.S.C. § 522(b)(2). Illinois's

exemptions include a "wildcard" for any property up to $4,000. 735 ILCS 5/12-1001(b). At the time of the Trustee's request, Meyers had $1,624 remaining in her "wildcard" exemption, and so the estate's share had to be reduced by that amount. The Trustee, therefore, claimed $973.60 ($2,597.60 less $1,624) of the 2007 tax refunds.

Meyers objected to the Trustee's motion, arguing that the proper method for calculating the estate's share (described in further detail below) would result in the estate's claiming only $349.91 after the wildcard was applied. Both the bankruptcy court and the district court agreed with the Trustee, and ordered Meyers to turn over the $973.60 that the Trustee requested.

## II

### A

Before analyzing Meyers's specific situation, we step back to discuss why tax refunds pose a particular problem. Under the Bankruptcy Code, a trustee is assigned to administer the bankruptcy estate; to that end, the property of the estate must be turned over to the trustee. 11 U.S.C. § 542. Property of the bankruptcy estate is defined to include "all legal and equitable interests of the debtor in property as of the commencement of the case." *Id*. § 541(a)(1). As noted earlier, the time of the petition (the "commencement of the case," *id*. § 301(a)) is the key point for identifying the assets of the estate.

Courts have recognized that tax refunds received after the petition may, in some cases, represent pre-petition assets and thus are part of the bankruptcy estate. See, *e.g.*, *In re Barowsky*, 946 F.2d 1516, 1518 (10th Cir. 1991) (collecting cases). The background rule under the old Bankruptcy Act, to which courts still refer in the era of the Bankruptcy Code, defines the bankruptcy estate to include property that is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bank-rupts' ability to make an unencumbered fresh start." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966). See S. REP. NO. 95-989, at 82 (1978) (noting that, with reference to § 541 of the Code, "[t]he result of *Segal v. Rochelle . . .* is followed, and the right to a refund is property of the estate") (internal citation omitted).

These general rules provide the background for re-solving disputes over tax refunds, but they are only a starting point. The fact that reasonable people can identify competing methods for calculating the pre-petition share of the refunds betrays the incompleteness of a rule that simply calls for identifying at what time an asset became "rooted." In this case, the parties proffer two competing calculations. As described above, the Trustee argues that the best method for this case is the *pro rata* by days calculation. The Trustee recognizes that this method is not appropriate in all cases—for example, for debtors whose income fluctuates widely from month to month throughout the year—but given the steady rate with which Meyers's income, withholding, and antici-pated refunds grew, it works here. Bankruptcy courts often have approved turnover orders based on the

*pro rata* by days method for this type of debtor. See, *e.g.*, *In re Trickett*, 391 B.R. 657, 660 (Bankr. D. Mass. 2008); *In re Marvel*, 372 B.R. 425, 433-34 (Bankr. N.D. Ind. 2007).

Meyers urges us to select a different methodology, one articulated by the U.S. Bankruptcy Court for the Western District of Texas in *In re Donnell*, 357 B.R. 386 (Bankr. W.D. Tx. 2006). *Donnell* began as this case did: the debtor filed for bankruptcy mid-year; a tax refund for that year was issued post-petition; and the trustee requested the *pro rata* by days share. The bankruptcy court rejected this request. It noted that the *pro rata* method assumed that "the debtor had a steady income during the tax year, had regular withholding of income taxes throughout the tax year, and had an interest in any refundable tax credits that grew regularly over the tax year." *Id.* at 396. The Donnells did not. *Id.* at 396-97. Therefore, the court concluded that it had to "examine each of the *components* of the tax refund to determine whether, on the petition date, the debtor possessed a legal or equitable interest in that component." *Id.* at 397 (emphasis in original). Most importantly for Meyers's case, the court in *Donnell* held that the bankruptcy estate was entitled to the debtor's tax refund only to the extent that the pre-petition withholding amount exceeded the tax liability for the entire year. *Id.* at 398-400. It is this formula that Meyers asks us to apply to her case.

We note for completeness that various other methods for calculating the estate's share of the refund are also available—most obviously, the court could endeavor to calculate the pre-petition withholding less the pre-petition

liability, rather than comparing the pre-petition with-holding to the full-year liability as the *Donnell* court did. But we do not need to theorize about the ideal method for calculating these amounts. Our role is only to evaluate the evidence presented by the Trustee and to determine whether she met her burden to show the amount that should be included in the bankruptcy estate. It is to that burden we now turn.

Under the defunct Bankruptcy Act, we laid out the burdens of persuasion in turnover actions as follows. The trustee must bring the action to claim property for the bankruptcy estate, and she bears the burden of establishing a *prima facie* case for turnover. *Gorenz v. Ill. Dep't of Agric.*, 653 F.2d 1179, 1184 (7th Cir. 1981) (citing *Maggio v. Zeitz*, 333 U.S. 56 (1948)). Once a *prima facie* case is established, the debtor must provide a reason for going forward with the case, but the ultimate burden of persuasion remains with the trustee at all times. *Id.* See *In re U.S.A. Diversified Products, Inc.*, 196 B.R. 801, 805 (N.D. Ind. 1996) (applying this approach under the Code); *In re Schneider*, 417 B.R. 907, 919 (Bankr. N.D. Ill. 2009) (same). We take this opportunity to place our imprimatur on this approach under the Bankruptcy Code. Asking the trustee to engage in extensive investigations and complicated calculations before filing a turnover order will necessarily result in increased costs to the bankruptcy estate, see 11 U.S.C. § 507(a)(1)(C)—costs that we do not believe are necessary unless and until the debtor provides a reason to go forward. At the same time, our approach gives every debtor the opportunity to challenge the trustee's proposed assessment of

the estate's interest. The weaker the trustee's case, the easier it will be for the debtor to upset it.

There is some dispute whether the trustee must establish the estate's right to the property by a preponderance of the evidence or by the more demanding standard of clear and convincing evidence. Compare *In re Quality Health Care*, 215 B.R. 543, 549 (Bankr. N.D. Ind. 1997) (adopting the preponderance-of-evidence standard based on *Grogan v. Garner*, 498 U.S. 279, 286 (1991), which applied that standard to dischargeability exceptions) with *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990) (applying the clear-and-convincing-evidence standard). See also *Oriel v. Russell*, 278 U.S. 358 (1929) (applying the clear-and-convincing standard to a turnover action almost half a century prior to the adoption of the Bankruptcy Code). Although we think that the default preponderance standard that the Supreme Court applied to dischargeability in *Grogan* is probably the appropriate one also for turnover actions, because we would come to the same conclusion in this case under either evidentiary standard, we need not resolve that issue today.

B

With this background established, we are ready to look at the Trustee's *prima facie* case in support of her assertion that $973.60 from Meyers's 2007 refunds should be turned over to the estate. The Trustee identified the value of the 2007 tax refunds, properly calculated the

*pro rata* by days share, and asked the district court to accept this calculation. This evidence alone may be enough for a *prima facie* case, but the Trustee went further here. She noted, as described above, that the debtor's income and withholding advanced at a fairly steady rate throughout the tax year, and there were no income or withholding spikes after she filed her bankruptcy petition that would be swept in unfairly by the *pro rata* method. The district court noted, for example, that Meyers's pre-petition and post-petition withholding represented similar percentages of her taxable earnings (17.6% versus 16.9%). (Meyers disputes this calculation in her briefs to this court, but her alternative erroneously used gross income rather than taxable income.) In fact, as our table above indicates, the *pro rata* by days method represents a smaller request (73.42% of the refunds) than a calculation based on the pre-petition proportion of Meyers's total income, gross taxable income, or federal and state withholding (ranging from 76% to 78%). These data were good enough for the bankruptcy court and the district court, and they are good enough for us.

Having established the *prima facie* case for turnover, we look to the debtor for reason to go forward. Meyers did not meet this obligation. One would have expected a debtor in her position to present specific facts showing where and how the progression of her income, liabilities, and withholding deviated from a perfectly linear function, thus making the *pro rata* by days method a poor fit. Meyers took a different tack, arguing vociferously for an alternative calculation of the estate's share, without

much attention paid to the specifics of her case. Meyers wants us to apply *Donnell*, and that is nearly all she has to say on the matter. (Meyers has long since abandoned any claims regarding potentially different allocation rules for tax credits.)

Pointing to a single bankruptcy court decision applying a different methodology is not enough to undermine the Trustee's calculations. Meyers's position is particularly weak because the court in *Donnell* based its conclusion on the fact that the Donnells's income and withholding varied. Meyers presents no evidence of such variability here; to the contrary, the Trustee's data show that Meyers's financial picture was reasonably stable through the year. There may be a deeper problem with *Donnell*. Both the Trustee and the bankruptcy court expressed skepticism about its soundness, because of the risk that the *Donnell* approach could require the pre-petition creditors to assume post-petition tax liabilities. Expressed another way, *Donnell*'s approach opens the door for the debtor to transform pre-petition assets into post-petition income by "pre-paying" post-petition taxes. This result can be avoided by requiring the parties to present evidence about the specific facts of the case and then determining pre-petition assets with reference to those facts.

Meyers also suggests that looking at tax liability on the date of the petition improperly requires the debtor to make a "short-year election." See 26 U.S.C. § 1398(d)(2) (allowing a debtor to split the tax year at the bankruptcy commencement date). We do not find that analogy to be

apt. The short-year election comes with many conse-
quences, not all of which would follow from a court's
decision to apply a similar method to calculating lia-
bility. See, *e.g., id.* § 1398(d)(2)(E) (requiring separate
tax returns for the two-parts of the tax year). Using a
calculation that parallels the short-year election has no
tax consequences for the debtor. Under the Bankruptcy
Code, the court must decide what property belongs in
the bankruptcy estate; if the best method happens to
look like an involuntary option under the Tax Code,
so be it.

Finally, at oral argument Meyers insisted that tax with-
holding is optional and that the *Donnell* method is neces-
sary to avoid penalizing the debtor for withholding
income. We dispute both the premise and the conclusion.
Withholding is not always optional, see *id*. § 3402(a)(1)
("Except as otherwise provided in this section, every
employer making payment of wages shall deduct
and withhold upon such wages a tax determined
in accordance with tables or computational procedures
prescribed by the Secretary."), and in any event, a case-by-
case calculation of pre- and post-petition assets should
avoid any outcome that would properly be seen as a
penalty.

In sum, the Trustee presented a *prima facie* case for the
*pro rata* by days method. None of Meyers's arguments
persuades us that this approach is a bad fit for her case.
Evidence is clear and convincing if it "leave[s] no rea-
sonable doubt in the mind of the trier of fact as to the
truth of the proposition in question," *Davis v. Combes*,

294 F.3d 931, 936-37 (7th Cir. 2002) (internal quotation marks omitted), and proof by a preponderance of the evidence means that the "trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question," *American Grain Trimmers, Inc. v. Office of Workers' Compensation Programs*, 181 F.3d 810, 817 (7th Cir. 1999). While we agree that the *pro rata* by days method may not be a one-size-fits-all solution, by any standard the Trustee has met her burden in this case.

For these reasons, we AFFIRM the judgment of the district court.