# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1704 & 11-1705

BANK OF AMERICA, N.A.,

*Plaintiff-Appellee,*

*v.*

PETHINAIDU VELUCHAMY and
PARAMESWARI VELUCHAMY,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 09-cv-05108 & 09-cv-05109—**Milton I. Shadur**, *Judge.*

ARGUED MAY 2, 2011—DECIDED MAY 4, 2011[1]
PUBLISHED JUNE 16, 2011

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge*.  This case presents the question of whether a district court has the power to temporarily seize the passports of judgment-debtors who are subject to a production of assets order. We conclude that the district court has that authority, and therefore

---

[1]  With notation that an opinion would follow.

affirm the portion of the order seizing the Veluchamys' passports.

In June 2009, Pethinaidu and Parameswari Veluchamy defaulted on debts owed to Bank of America to the tune of thirty-nine million dollars. Bank of America sued the Veluchamys for breach of contract in district court, and the district court ultimately entered a judgment in favor of Bank of America in December 2010. Post-judgment proceedings began in earnest, with Bank of America working to locate assets owned by the Veluchamys that could be applied to satisfy the multi-million dollar judgment against them.

During the post-judgment proceedings, the district court entered a number of citations requiring the Veluchamys to turn over financial records and respond to questions regarding their assets. The Veluchamys' response rate was rather sluggish. From January to March 2010, the Veluchamys refused to provide any information regarding their assets, instead making a blanket assertion that the Fifth Amendment privilege against self-incrimination applied to all testimony they might provide. They did this despite the fact that such a broad, undifferentiated assertion is insufficient in a post-judgment proceeding; instead, the privilege must be asserted in a far more specific fashion. *See*, *e.g.*, *United States v. Hatchett*, 862 F.2d 1249, 1251 (6th Cir. 1988); *Capitol Prods. Corp. v. Hernon*, 457 F.2d 541, 542-43 (8th Cir. 1972). The district court ultimately rejected the Veluchamys' Fifth Amendment claim in early March 2011, instructing them to comply with the citations forthwith.

Bank of America did not sit idly by during the Veluchamys' silence. The Bank received some responses to the district court's citations from third-party financial institutions. Through these responses, Bank of America learned that the Veluchamys had transferred significant sums of money (about twenty million dollars) out of their bank accounts in the United States and into their bank account in India after they defaulted on their loans in June 2009. The Veluchamys also diluted or transferred their ownership interests in their non-movable assets located in the United States during the same period. Thanks to the Veluchamys' efforts, there are now sparse funds remaining within the United States (and the district court's jurisdiction) to satisfy the judgments against them.

Based on these discoveries—along with the Veluchamys' hesitance to respond to the district court's citations—Bank of America moved for an emergency order compelling the Veluchamys to produce the funds that they transferred to India and deposit them with the district court. They also requested that the Veluchamys turn over their passports until the funds were transferred, for fear that the Veluchamys would flee when ordered to deposit the cash with the court. Over the course of one day, the district court reviewed the evidence regarding these transfers put forth by Bank of America and addressed the Veluchamys' objections. The district court then ordered the Veluchamys to repatriate the funds or disclose the reasons precluding them from doing so. The district court also found that—in the interim—

the Veluchamys were flight risks, and it ordered them to relinquish their passports until they complied with the production order.

The Veluchamys appeal the portion of the district court's order temporarily seizing their passports. We begin where we must—with our jurisdiction to hear their appeal. The post-judgment proceedings continue below, so we would normally lack the power to hear the appeal for want of a final judgment resolving the parties' claims. 28 U.S.C. § 1291; *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Immediate appeal is permitted, however, for orders that are collateral to the merits of the proceeding. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). An order is collateral when it "conclusively determines a disputed question that is separate from the merits of the case and is effectively unreviewable on an appeal from the final judgment." *Jones v. Clark*, 630 F.3d 677, 679 (7th Cir. 2011).

Both parties contend that the district court's seizure order is a collateral order, and we agree. First, the seizure portion of the order is indeed conclusive. Even though the order was designed to be temporary, its termination depends upon various conditions being satisfied; it thus answers the question of seizure for an indefinite period of time. Second, the order directly addresses an issue that is separate from the merits of the post-judgment proceeding: whether the Veluchamys retain their passports is sufficiently distinct from what funds must be applied to the judgment and where those funds are located (the subjects of a post-

judgment proceeding). Finally, because the Veluchamys' passports will have been returned by the time the proceedings end, the order will be unreviewable at a later time. Satisfied that the order is collateral, we may proceed to the merits of the appeal.

On the merits, the Veluchamys focus their argument on whether the district court had the power to seize their passports. They contend that a judgment-debtor's passport can be seized only upon a finding of contempt, and only then if the record establishes a demonstrated history of flight on the part of the judgment debtor. For its part, Bank of America asserts that the district court has the power to temporarily seize the passport of a judgment debtor in limited circumstances, even without a finding of contempt.

The powers available to a district court in a post-judgment proceeding are dictated by state law—here, the law of Illinois. *See* Fed. R. Civ. P. 69; *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009). Illinois law, in turn, provides the court with a variety of tools that can be used to satisfy a judgment. For example, the court may issue citations ordering parties and non-parties to turn over information, it may order parties and non-parties to transfer funds to satisfy a judgment, and—as is germane here—it may summarily compel a party or non-party to produce funds within their control. *See* 735 ILCS 5/2-1402(a)-(c). These powers are to be broadly construed, providing the district court with the authority to enter a wide variety of orders to ensure that usable assets are located, seized, and—where appro-

priate—applied to the judgment. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 624 (7th Cir. 2010); *Soc'y of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135-36 (7th Cir. 2001); *City of Chicago v. Air Auto Leasing Co.*, 697 N.E.2d 788, 791 (Ill. App. Ct. 1998).

In light of this broad construction, we think the power to order a party to produce funds includes the power to exercise some minimal control over the party subject to that order—but only when doing so is necessary to protect the court's ability to enforce the underlying order and prevent the loss of assets. *Cf. Herbstein v. Bruetman*, 241 F.3d 586, 588-89 (7th Cir. 2001) (contempt power includes the power to seize a party's passport); *SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) (injunction power reaches orders "essential to prevent the dissipation of assets"). Whether such controls are necessary will depend upon the circumstances of the case, but it will be a rare case where any extraordinary steps are needed. In the lion's share of cases, the debtor will not have moved assets to a locale beyond the court's jurisdiction, and thus the court's other powers—especially its power to order the holding financial institution itself to freeze the assets—will be enough to safeguard the court's ability to enforce a production order. But in the outlier case where the court can seize the funds at issue only through a particular party, the district court's ability to enforce a production order is threatened if the party subject to the order demonstrates a risk of flight. In that limited circumstance, a concomitant order exercising some minimal control (in the form of a passport seizure) is permissible.

The district court found that this was the rare case where such an order was justified, and we agree. The bases for findings of necessity and flight risk were clear and largely uncontested. The district court was faced with debtors who had previously transferred abroad all of the funds now subject to the order and were simultaneously hesitant to disclose information that would have revealed those transfers. The district court found that the extra-territorial location of the funds threatened its ability to enforce the production order; in other words, it found that the only way it could access the funds at issue was through the Veluchamys. The court also found that the Veluchamys had minimal assets in the United States, what appeared to be significant assets abroad, and a reluctance to disclose those facts, all of which established some flight risk. We see no clear error with those findings, and believe they are adequate to support the minimal seizure imposed. *Cf. United States v. Shaheen*, 445 F.2d 6, 11-12 (7th Cir. 1971) (suggesting that a district court's seizure of a party's passport is permissible when a judgment has been entered, when there have been significant transfers abroad, and when domestic funds would be inadequate to satisfy the judgment). Nor do we see any fatal flaw in the form those findings took; while a district court should enter findings to support an injunction, a lack of findings does not necessitate remand where—as here—there is "a sufficient record from which we can render a decision." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010).

The Veluchamys finally claim that, even if the district court had the power to seize their passports, the court did not exercise that power in a manner comporting with due process. They suggest—in a cursory manner—that due process and the rules of procedure for an injunction likely go hand in hand for the seizure here. While we are inclined to agree, the Veluchamys' argument on this point is perfunctory and incomplete. The vast majority of their brief focuses on the question of whether the district court had the *power* to seize their passports, not on what *process* was due if that power existed. The Veluchamys do not mention due process in their statement of issues, and their argument section contains only a blanket assertion that there was a violation of due process. Conspicuously absent from their argument is a thorough discussion of what process would be appropriate and why. As one circuit eloquently put it, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). The Veluchamys have done just that, and their argument is therefore waived. *See, e.g.*, *United States v. Courtright*, 632 F.3d 363, 370 (7th Cir. 2011) ("[W]e are not in the business of formulating arguments for the parties."); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009); *White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them . . . .").

In the end, we answer the only question properly presented. The district court had the power to impose a minimal seizure on the Veluchamys until they abided by the asset production order or explained to the district court why they could not. The Veluchamys complain that all of this effort is for naught because "[t]here is just very little money available to satisfy [Bank of America's] judgment." The district court has responded with an order designed to make them prove it, and until they show that the money is unavailable (or until they transfer the funds subject to the order back to the United States), their passports will remain in the district court's care. The district court's order is

AFFIRMED.