In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 21-2850

DOUGLAS A. KELLEY,

*Plaintiff-Appellee,*

*v.*

STEVEN STEVANOVICH,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-08394 — **John J. Tharp, Jr.**, *Judge.*

---

ARGUED MAY 26, 2022 — DECIDED JULY 21, 2022

---

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* This case concerns high-end wine
and spirits purchased with funds linked to the now infamous
multi-billion-dollar Petters Ponzi Scheme. In 2015, a bank-
ruptcy court in the District Court of Minnesota entered a
$578,366,822 default judgment for Douglas A. Kelley—the liq-
uidating trustee for Petters Company, Inc.—against Capital
Strategies Fund, Ltd. ("Capital Strategies"), a recipient of the
scheme's funds. In 2018, Kelley ("the Trustee") initiated post-

judgment supplementary proceedings in the Northern District of Illinois against Capital Strategies' director and investment manager, Steven Stevanovich, to enforce the judgment against Capital Strategies. The Trustee claimed Stevanovich owed Capital Strategies $1,948,670.79 under an Illinois state law theory of embezzlement. The Trustee presented evidence that Stevanovich used Capital Strategies' assets to purchase wine for his personal use. The district court agreed. It granted the Trustee's motion for a turnover order on the briefs, without conducting an evidentiary hearing, and found by a preponderance of the evidence that Stevanovich embezzled the funds. Because Stevanovich owed Capital Strategies, and Capital Strategies owed the Trustee, the Trustee could step into Capital Strategies' shoes and collect Stevanovich's debt.

On appeal, Stevanovich alleges a series of errors, challenging the district court's application of procedural and substantive law. We find no error and affirm.

## I. Background

In the 2000s, Capital Strategies held tens to hundreds of millions of dollars belonging to a sole investor, with Stevanovich at the helm as its sole director. Capital Strategies invested in the multi-billion-dollar Petters Ponzi scheme and got out before the scheme collapsed in 2008. While some investors lost everything, Capital Strategies seemingly benefited and earned tens of millions on its investments. To level the field, the Bankruptcy Code empowers the Trustee to recover funds from investors like Capital Strategies, who otherwise would profit from the scheme at the expense of other investors. By the time the Trustee attempted to use these powers against Capital Strategies, it had dissolved; the Trustee had a large money judgment against an entity that no longer

existed. To enforce the judgment, the Trustee turned to Stevanovich, an Illinois resident, and filed a post-judgment supplementary proceeding in the Northern District of Illinois under the court's diversity jurisdiction. *See* 28 U.S.C. § 1332.

Federal Rule of Civil Procedure 69 instructs courts to apply state law in post-judgment proceedings. Under Illinois law, a judgment creditor may recover assets from a third party if the judgment debtor has an Illinois state law claim of embezzlement against the third party. 735 ILCS 5/2-1402(c)(3). Thus, the Trustee could recover the full amount Stevanovich owed if Capital Strategies had a valid embezzlement claim against Stevanovich. Further, Illinois Supreme Court Rule 277(a) allows the Trustee to initiate proceedings against the third-party Stevanovich directly.

In his turnover motion, the Trustee argued that Stevanovich embezzled Capital Strategies' funds to purchase high-end wine for his personal use and transferred the goods to Stevanovich's personal wine cellar in Switzerland. The Trustee submitted ample evidence to support his claim. A vendor attested that he sold the wine to Stevanovich and shipped it to Switzerland. The vendor stated that Stevanovich placed all orders personally, and the vendor sent all invoices directly to Stevanovich. Finally, the vendor's bank statements indicate payments for the shipments came from Capital Strategies' accounts.

During Stevanovich's 2018 deposition in the bankruptcy proceedings in the District of Minnesota, the Trustee asked Stevanovich about these purchases. Stevanovich admitted he collected wine, and explained that he enjoyed expensive wine and frequently gave bottles as gifts. He vehemently denied, however, any memory of the vendor or purchases, despite

admitting he may have been the only person with signatory authority over Capital Strategies' accounts at the time. The Trustee unsuccessfully attempted to refresh Stevanovich's recollection of the events with various pieces of evidence. Stevanovich held firm, even after reviewing the vendor's statements showing Capital Strategies' payments ranging from tens of thousands to hundreds of thousands of dollars. The Trustee submitted a full transcript of the deposition with his turnover motion.

Stevanovich's response to the turnover motion relied heavily on his own affidavit providing a detailed recount of the same wine purchases he could not recall just a year before. He now claimed that the wine purchases were an investment strategy for Capital Strategies' sole investor—one of Stevanovich's in-laws. Stevanovich chose to store the wine in his personal wine cellar in Switzerland to cut down on costs. In 2009, Capital Strategies transferred the wine to TGG Capital Ltd. ("TGG Capital"), a separate investment vehicle belonging to the same sole investor but with which Stevanovich had no affiliation. In 2012, the sole investor instructed TGG Capital to auction the wine at Christie's. Three payments passed through a third party's United States escrow account on their way to TGG Capital's Bermuda bank account. Stevanovich included scant evidence to corroborate his story: escrow statements for the first two payments, wire instructions to the escrow agent, and TGG Capital's statements showing receipt of all three wires. The escrow documents indicated that Stevanovich was personally involved in the transactions. None of the documents provided context for the fund transfers. In effect, Stevanovich's defense would succeed or fail on the strength of his uncorroborated affidavit.

In reply, the Trustee questioned the veracity of Stevanovich's affidavit but suggested that a hearing could resolve any factual issues. For his part, Stevanovich never requested a hearing or stated the extent to which he planned to back up his affidavit with additional testimony or evidence. To the contrary, he previously asked not to come to court. He also filed a surreply arguing that no material factual dispute existed.

The district court ruled on the evidence before it without conducting a hearing. It first addressed threshold questions the parties had briefed, including whether the Trustee's supplementary action was timely. The district court rejected Stevanovich's argument that the five-year statute of limitations for embezzlement applied, accruing from the dates of the wine purchases. *See* 735 ILCS 5/13-205. Instead, it applied the seven-year statute of limitations for supplementary proceedings accruing from the date of the bankruptcy court judgment. *See* 735 ILCS 5/12-108(a); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 627 (7th Cir. 2010).

Next, the district court explained that to prove embezzlement under Illinois law the Trustee had to show by a preponderance of the evidence that Stevanovich (1) had a special relationship with Capital Strategies, (2) converted Capital Strategies' property for his own use, and (3) had the intent to embezzle. *See People v. Curoe*, 422 N.E.2d 931, 941–42 (Ill. App. Ct. 1981). The district court found that the Trustee satisfied each element. First, Stevanovich was Capital Strategies' sole director and was authorized to use the fund's bank account at the time of the purchases. Second, Stevanovich purchased the wine with Capital Strategies' funds and had the wine shipped to his personal wine cellar. Third, the evidence sufficiently

established intent. Stevanovich never disputed the underlying facts.

Then, the district court addressed Stevanovich's affidavit. It noted that Stevanovich's story was internally inconsistent. If Stevanovich had transferred the wine to TGG Capital in 2009, why was he involved in the subsequent transaction? The affidavit also directly conflicted with Stevanovich's prior sworn deposition testimony in the previous adversary proceeding, and Stevanovich failed to offer any explanation for the inconsistencies. The district court found it incredible that Stevanovich could not recall a $2 million transaction with which he had been intimately involved. Further, Stevanovich did not present sufficient documentary evidence to support his affidavit. The district court believed the evidence undermined Stevanovich's story by suggesting he had a personal stake in the transaction. It concluded that the Trustee met his burden, and the "negligible weight" of Stevanovich's affidavit could not overcome the Trustee's showing.

The district court further found that Stevanovich did not present evidence sufficient to create disputes of fact that would require a hearing. Indeed, Stevanovich did not identify any disputed issues of fact. The district court granted the Trustee's motion and ordered Stevanovich to turn over the $1,948,670.79 he embezzled from Capital Strategies to purchase wine for his personal use.

Stevanovich moved the district court to vacate its order, arguing that the district court should have held a hearing and afforded Stevanovich the opportunity to support his affidavit in court. Stevanovich suggested that a second look at the evidence would resolve the district court's concerns and show that he did not benefit from the wine sale. The district court

denied the motion. It explained that Stevanovich's focus on the 2012 sale was irrelevant—the district court based its findings on the 2006–2008 purchases. Stevanovich simply failed to refute the Trustee's evidence for the relevant period. It also denied Stevanovich's request for a hearing.

Stevanovich timely appealed the district court's order granting the Trustee's turnover motion. He did not appeal the district court's order on his motion to vacate.

## II. Discussion

A turnover order is a final judgment that we review de novo. *Nano Gas Techs., Inc. v. Roe*, 31 F.4th 1028, 1031 (7th Cir. 2022) (citing *Maher v. Harris Tr. & Sav. Bank*, 506 F.3d 560, 561–62 (7th Cir. 2007)).

Stevanovich claims the district court erred when it (1) found the Trustee's claim was timely, (2) ruled on the Trustee's motion without holding an evidentiary hearing, (3) used the preponderance of the evidence standard of proof for embezzlement, (4) applied Illinois embezzlement law, and (5) found the evidence sufficient to rule for the Trustee. We consider and reject each argument in turn.

### A. Statute of Limitations

Stevanovich initially argues that the district court erred by applying the seven-year statute of limitations for supplementary proceedings instead of the five-year statute of limitations for embezzlement claims. The time for Capital Strategies to file embezzlement claims against Stevanovich, predicated on wine purchases between 2006 and 2008, would have expired between 2011 and 2013. Therefore, Stevanovich maintains, the Trustee cannot bring a claim that Capital Strategies would be time-barred from bringing.

In *Dexia Credit Local v. Rogan*, we rejected a similar argument that the statute of limitations for the underlying theory of recovery applies in supplementary proceedings. 629 F.3d at 627. The *Dexia* judgment creditor sought to recover assets under a theory of constructive trust, which on its own carries a five-year statute of limitations in Illinois. *Id.* at 626; *see* 735 ILCS 5/13-205 (setting a default five-year period for civil claims not otherwise provided for). The district court applied the seven-year statute of limitations for a judgment creditor to enforce a judgment. 629 F.3d at 626; s*ee* 735 ILCS 5/12-108. We affirmed, reasoning that the supplementary proceedings "were initiated to enforce and satisfy a previously-obtained money judgment … [and] the statute specifically governing such proceedings determines the rights and liabilities of the parties." 629 F.3d at 627.

In defining the scope of supplementary proceedings, the *Dexia* Court explained that "[a]s long as the action seeks the judgment debtor's assets and does not concern personal liability, it falls within the scope of a supplementa[ry] proceeding." *Id.* at 624 (citing *Kennedy v. Four Boys Labor Serv., Inc.*, 664 N.E.2d 1088, 1092–93 (Ill. App. Ct. 1996)). Furthermore, a judgment creditor may not initiate supplementary proceedings until they have obtained a favorable judgment. *Id.* at 620–21 (citing *Marble Emporium, Inc. v. Vuksanovic*, 790 N.E.2d 57, 62 (Ill. App. Ct. 2003)). It follows that a judgment creditor who begins a supplementary proceeding against a third party exercises his own right to enforce a judgment, not the judgment debtor's personal right to pursue the underlying claim against a third party. The focus is on the transfer itself and the underlying claim determines the transfer's validity. Illinois law clearly establishes a seven-year statute of limitations from the date a judgment creditor receives a right to pursue recovery.

The Trustee received an enforceable money judgment in 2015 and initiated supplementary proceedings in 2018. The district court properly applied the seven-year statute of limitations for enforcing a money judgment and did not err in finding the Trustee's action timely.

**B. Evidentiary Hearing**

Stevanovich argues the district court erred by granting the Trustee's turnover motion without conducting an evidentiary hearing. We review a district court's decision to conduct an evidentiary hearing for abuse of discretion. *See Cont'l W. Ins. Co. v. Country Mut. Ins. Co.*, 3 F.4th 308, 318 (7th Cir. 2021) (citing *Royce v. Michael R. Needle P.C.*, 950 F.3d 481, 487 (7th Cir. 2020)). A decision relying on an error of law is itself an abuse of discretion. *See In re Veluchamy*, 879 F.3d 808, 823 (7th Cir. 2018) (citing *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892 (7th Cir. 2012)).

Federal Rule of Civil Procedure 69(a)(1) provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Generally, a relevant federal civil rule controls "since those rules have the force of a statute." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3012 (3d ed. 2022); *see Vera v. Rep. of Cuba*, 802 F.3d 242, 244 & n.3 (2d Cir. 2015); *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010). In *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7th Cir. 1993), we read this general principle narrowly, concluding that Rule 69 required

only that the relevant federal rules of execution control, not all federal rules of procedure or evidence. 994 F.2d at 1226. We also declined to adopt the inverse—that state rules otherwise control. *Id.* Reasoning that the drafters did not intend for Rule 69 to place courts in a "procedural straitjacket, whether of state or federal origin," we suggested that federal courts have some discretion when conducting supplementary proceedings. *Id. Ruggiero* implies a certain latitude that we have since clarified.

In *Star Insurance Company v. Risk Marketing Group Inc.*, 561 F.3d 656 (7th Cir. 2009), we explained that the supplementary proceedings should conform to Illinois state law. 561 F.3d at 661 (citing *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1139, 1195 (7th Cir. 1996)). Rule 69 requires federal courts to adopt state procedure "unless there is an applicable federal statute expressly regulating the execution of judgments." *Id.* (quoting *Maher*, 506 F.3d at 563). Two years later, in *Bank of America, N.A. v. Veluchamy*, 643 F.3d 185 (7th Cir. 2011), we noted that Rule 69 requires federal courts to apply state procedure, but Illinois law regarding supplementary proceedings provides courts with a broad authority to enforce a judgment. 643 F.3d at 188 (citations omitted). Federal courts have procedural leeway because Illinois law supplies many options for enforcement. Our post-*Ruggiero* decisions clarify that if Illinois law requires an evidentiary hearing in supplementary turnover proceedings, *Ruggiero* does not empower a federal court to disregard that requirement unless a federal statute says otherwise.

Stevanovich relies on Illinois Supreme Court Rule 277(e) and Illinois caselaw to argue that Illinois law requires a hearing. Rule 277(e)'s text indicates that the "hearing" concerns

the judgment creditor's "examination of the judgment debtor," and the judgment creditor may "elect[] … to conduct all or a part of the hearing by deposition." Read contextually, this language focuses on the judgment creditor's investigation into the judgment debtor's assets, *see* Ill. Sup. Ct. R. 277(c) (outlining the examination), and does not support Stevanovich's argument.

The Illinois Supreme Court, in *Dowling v. Chicago Options Associates, Inc.*, 875 N.E.2d 1012 (Ill. 2007), implied that an evidentiary hearing is not mandatory in supplementary proceedings. The *Dowling* majority noted that the lower court's decision not to conduct an evidentiary hearing before ruling on a turnover motion impacted the standard of review. 875 N.E.2d at 1017. While an evidentiary hearing typically earns a lower court decision deference on appeal, the lack of a hearing requires de novo review. *Id.* (citing *Nw. Diversified, Inc. v. Mauer*, 791 N.E.2d 1162, 1167 (Ill. App. Ct. 2003)).

Illinois intermediate courts lack consensus on when a hearing is necessary post-*Dowling*. Stevanovich directs us to *Workforce Solutions v. Urban Services of America, Inc.*, 977 N.E.2d 267 (Ill. App. Ct. 2012), where the Court suggested Rule 277(e) requires an evidentiary hearing unless a party moves for summary judgment or the parties stipulate to the facts. 977 N.E.2d at 275–77. Yet four years later, in *Xcel Supply LLC v. Horowitz*, 100 N.E.3d 557 (Ill. App. Ct. 2018), another intermediate court questioned the reasoning in *Workforce Solutions*. 100 N.E.3d at 566–67. The *Xcel Supply* Court observed that the *Dowling* parties never moved for summary judgment or stipulated to the facts. *Id.* at 566. It cited multiple post-*Dowling* cases where intermediate courts affirmed turnover orders issued without evidentiary hearings. *Id.* (citing *Urban*

*P'ship Bank v. Winchester-Wolcott, LLC*, 16 N.E.3d 285, 287 (Ill. App. Ct. 2014); *In re Estate of Zagaria*, 997 N.E.2d 913, 920–21 (Ill. App. Ct. 2013)).

*Dowling* and its subsequent interpretations make clear that Illinois law does not require an evidentiary hearing in all supplementary turnover proceedings. Although the precise contours of when such a hearing is required are blurred, it is clear the district court did not err in ruling without a hearing in this case. It had no reason to conduct a hearing because Stevanovich failed to present any evidence creating an issue of fact that necessitated one. Indeed, he even represented that no material factual disputes existed.

Again, Stevanovich's only support was his affidavit, and the district court assigned little weight to his claims. We observed at oral argument that the district court's approach echoed the sham-affidavit rule. "In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 569 (7th Cir. 2022) (quoting *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020)). The rule posits that "a *genuine* issue of material fact cannot be conjured out of nothing." *James*, 959 F.3d at 316. Though the district court stopped short of making a sham-affidavit finding, the rule's principles are applicable here.

A weak affidavit—of questionable veracity, lacking corroborating evidence, and contradicting prior sworn deposition testimony—is insufficient to meaningfully refute the Trustee's showing that Stevanovich used Capital Strategies' funds to buy wine for his own use. The Trustee submitted uncontested facts, supported by the evidence, with his motion.

Stevanovich's minimal response would not caution a judge to sua sponte hold a hearing before ruling.

Significantly, Stevanovich never asked for a hearing. In his appellate briefs and at oral argument, Stevanovich claimed he could not have anticipated that the district court would treat the Trustee's turnover motion in the same manner as a Federal Rule of Civil Procedure 56 motion for summary judgment. We disagree. It is reasonable that a successful turnover motion brings a level of finality to the proceedings. *See Ruggiero*, 994 F.2d at 1227 (rejecting a similar argument where the record appeared complete and there were no issues of material fact). Stevanovich should have recognized the importance of developing the evidentiary record before the district court ruled. His briefing below suggests he believed he had done enough. Stevanovich cannot gamble on a poorly developed affidavit then ask for a second chance after he loses.

**C. Standard of Proof**

Stevanovich next argues that the district court should have applied the clear and convincing standard of proof to determine whether the Trustee proved Stevanovich embezzled funds from Capital Strategies. Stevanovich admits that Illinois law does not identify a specific standard of proof. He turns instead to Supreme Court cases that pre-date the United States Bankruptcy Code. *See Maggio v. Zeitz*, 333 U.S. 56 (1948); *Oriel v. Russell*, 278 U.S. 358 (1929). In both decisions, the Supreme Court applied the clear and convincing standard to turnover orders against bankrupt debtors. *Maggio*, 333 U.S. at 64; *Oriel*, 278 U.S. at 362. The Trustee suggests we borrow the preponderance of the evidence standard for Illinois conversion claims. *See Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004).

We have previously stated that "unless the governing statute (or … rule) specifies a higher burden, or the Constitution demands a higher burden because of the nature of the individual interests at stake, proof by a preponderance of the evidence will suffice." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016) (citing *Grogan v. Garner*, 498 U.S. 279, 296 (1991); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983)); *see also Conley v. United States*, 5 F.4th 781, 795–96 (7th Cir. 2021) (restating this principle in the 28 U.S.C. § 2255 habeas corpus context). This default standard allocates risk of error equally between the parties and reflects that typically only money is at stake. *Ramirez*, 845 F.3d at 778 (citing *Herman & MacLean*, 459 U.S. at 390). "Any other standard expresses a preference for one side's interests." *Herman & MacLean*, 459 U.S. at 390.

The Supreme Court has identified preponderance of the evidence as the default standard in numerous civil contexts. *See Conley*, 5 F.4th at 794–95 (providing overview of Supreme Court precedent); *Ramirez*, 845 F.3d at 777–78 (same). Relevant here, the *Grogan* Court applied the default preponderance standard to dischargeability exceptions under the Bankruptcy Code. 498 U.S. at 286. The Code excepts from discharge assets the debtor received through "actual fraud." *Id.* at 281–82; *see* 11 U.S.C. § 523(a)(2)(A). Acknowledging the balance of interests outlined in *Herman & MacLean*, the *Grogan* Court explained that a debtor does not have "an interest in discharge sufficient to require a heightened standard of proof." 498 U.S. at 287. The *Grogan* Court also noted that Congress's decision to exclude debts for fraud reflected both creditors' interests to recover and broader policy interests. *Id.* Applying clear and convincing evidence "would have favored the interest in giving perpetrators of fraud a fresh start over the interest in

protecting victims of fraud." *Id.* The preponderance of the evidence standard properly balanced these competing interests. *Id.*

Stevanovich's reliance on *Maggio* and *Oriel* is not persuasive. Both cases considered an outdated procedure superseded by the Bankruptcy Code. *Grogan*'s treatment of the analogous fraud exception to discharge proceedings suggests the Court would not adopt *Maggio*'s and *Oriel*'s reasoning if it heard those cases today. In *In re Meyers*, 616 F.3d 626 (7th Cir. 2010), we observed that *Grogan*'s default rule would likely extend to turnover actions also brought pursuant to the Code. 616 F.3d at 630. Post-*Grogan*, only one of our sister circuits has relied on *Maggio* or *Oriel*'s reasoning in turnover actions, both times in unpublished opinions. *In re Ramirez*, 605 F. App'x 361, 364 (5th Cir. Mar. 30, 2015) (applying to Securities Exchange Commission receivership case); *In re Norris*, 1997 WL 256808, at *8 (5th Cir. Apr. 11, 1997) (applying to turnovers under the Bankruptcy Code). Conversely, the Tenth Circuit held *Grogan*'s preponderance standard applied to prove a debtor's transfers were willful violations of an automatic bankruptcy stay. *In re Johnson*, 501 F.3d 1163, 1169–70 (10th Cir. 2007); *see* 11 U.S.C. § 362(k)(1). We agree with the Tenth Circuit's approach. The preponderance of the evidence standard also appropriately balances the parties' competing interests over what is at stake in the litigation.

Though this case concerns a turnover order in a state law supplementary proceeding, the balance of interests between the parties remains the same as with federal bankruptcy proceedings. Because the Illinois statute does not provide a higher standard of proof for recovery, a third party's interest to avoid turnover does not outweigh the judgment creditor's

interest to recover when the third party has embezzled funds from the judgment debtor. Applying the clear and convincing evidence standard would favor the third party's interests to keep the funds over the judgment creditor's interests to recover the same for the victims. Therefore, the default rule controls: the judgment creditor need only prove embezzlement by a preponderance of the evidence.

Stevanovich claims that he has a personal interest in not being labeled an embezzler. Perhaps this is a natural consequence of the Trustee proving his case. Though the supplementary proceeding concerned the Trustee's right to recover, the inquiry necessarily required the district court to assess Stevanovich's actions. Both state and federal law provide many theories that a judgment creditor may prove to recover assets from a judgment debtor or third party. That some theories may carry negative connotations does not itself provide a basis for applying a heightened standard of proof.

### D. Illinois Embezzlement Law

Stevanovich argues that the district court misapplied Illinois embezzlement law when considering the evidence. Stevanovich concedes that the district court articulated the right legal standard, taking exception only to how the district court then used that standard. He suggests that Illinois law required the Trustee to show more than receipt or control over property to prove the second element of conversion for personal use. *See People v. Ervin*, 174 N.E. 529, 531 (Ill. 1930); *Seymour v. Williams*, 618 N.E.2d 966, 972 (Ill. App. Ct. 1993); *Curoe*, 422 N.E.2d at 941–42. He also argues that Illinois law required the Trustee to show some level of concealment or secrecy to prove intent to embezzle. *See People v. Parker*, 189 N.E. 352, 363–64 (Ill. 1934). Stevanovich claims the evidence shows he

placed the orders openly as an investment for the sole investor, sold the wine, and did not keep the proceeds from the sale. He submits the district court's ruling for the Trustee on this record proves a miscomprehension of Illinois law.

Stevanovich mischaracterizes the district court's decision. The district court found that Stevanovich used Capital Strategies' funds to purchase wine for his own use. Contrary to Stevanovich's claim that his affidavit provides the only evidence of intent, the Trustee's evidence supports the inference that Stevanovich purchased the wine for his own enjoyment. He personally placed the orders, paid from Capital Strategies' accounts, then moved the wine to his personal wine cellar. Stevanovich ran a small operation for a sole investor, siphoning money in incremental transactions over a two-year period from a fund at times worth hundreds of millions. This record supports a reasonable inference of concealment or secrecy. *See Curoe*, 422 N.E.2d at 942–43 ("Defendant's testimony that he had no intention to permanently deprive the heirs of their property is not decisive … '[a] guilty intent is necessarily inferred from the voluntary commission of … an act'" (quoting *Spalding v. People*, 49 N.E. 993, 999 (Ill. 1898)). The district court properly applied Illinois law.

**E. Sufficiency of the Evidence**

Finally, Stevanovich challenges the sufficiency of the evidence. He argues that his affidavit and supporting documents establish that Stevanovich acted on behalf of the sole investor. As we previously explained, Stevanovich's affidavit and supporting documents carry little weight. In contrast, the Trustee submitted competent, undisputed evidence to support his claim.

To recap, under Illinois law, the Trustee needed to establish by the preponderance of the evidence that Stevanovich (1) had a special relationship with Capital Strategies, (2) converted Capital Strategies' property for his own use, and (3) had the intent to embezzle.

First, Stevanovich does not contest that he had a special relationship with Capital Strategies because he served as its sole director.

Second, the evidence supports conversion for personal use. The wine vendor provided an affidavit attesting that Stevanovich personally placed the orders and had the wine shipped to his home in Switzerland. The vendor's records indicate payments for the wine came from Capital Strategies' bank account. At the time, Stevanovich was the only authorized signatory on its account. Given Stevanovich's penchant for collecting wine, these facts sufficiently show Stevanovich converted Capital Strategies' funds to buy wine for his own enjoyment.

Third, the evidence also supports Stevanovich's intent. Stevanovich is a wine connoisseur and sophisticated money manager. The evidence shows that he purchased the wine for himself and sent it to his home. There is no credible evidence that he acted on behalf of the sole investor instead of himself. Ten years later, under oath, he claimed ignorance. This is sufficient to infer intent.

The district court did not err in finding that the Trustee satisfied all three elements of embezzlement by the preponderance of the evidence.

### III. Conclusion

Stevanovich had his opportunity to contest the Trustee's claims that Stevanovich owed Capital Strategies money under a theory of embezzlement. If Stevanovich had more evidence or argument to present at a hearing, he should have included it in his briefing. The district court properly applied the law to the record before it.

AFFIRMED